564 P.2d 964 (1977)
FIRST NATIONAL BANK OF BRUSH, a National Banking Association, Plaintiff-Appellee,
v.
Reinhold BOSTRON, Defendant-Appellee, and
Colorado High Plains Agricultural Credit Corporation, Intervenor-Appellant.
No. 76-177.
Colorado Court of Appeals, Div. I.
March 3, 1977.
Rehearing Denied March 24, 1977.
*965 Edgar H. Brandenburg, J. Scott Detamore, Brush, for plaintiff-appellee.
E. Ord Wells, Fort Morgan, for intervenor-appellant.
No appearance for defendant-appellee.
STERNBERG, Judge.
The issues presented by this appeal are whether, under the Uniform Commercial Code, a perfected security interest in feed survives after consumption of the feed by cattle in which the secured party has no interest, and if so, whether the secured party is entitled to any of the proceeds from the sale of these cattle. We answer these questions in the negative and therefore affirm the judgment of the trial court.
One Eldon Weiss owned a ranch on which he raised cattle and feed crops. As a separate and distinct part of this operation Weiss entered into a joint venture with the defendant, Reinhold Bostron, under which Bostron was to supply the money and Weiss the labor necessary to raise Holstein heifers. The heifers were purchased by Bostron and Weiss with money borrowed from the plaintiff, First National Bank of Brush, which retained a perfected purchase money security interest in the animals. The Bostron-Weiss joint venture cattle were segregated from other cattle on the Weiss ranch. Feed for all the cattle, however, was commingled and fed to the animals Weiss owned individually and to those owned by the Bostron-Weiss joint venture. Intervenor, Colorado High Plains Agricultural Credit Corporation, held a perfected security interest given by Weiss, individually, in, among other things, "all feed now owned or hereafter acquired, all crops now growing or to be grown, proceeds and products of collateral."
The cattle raised by the joint venture were eventually sold at a loss, and consequently, even after paying most of the proceeds from the sale to First National Bank of Brush, there was a deficiency owing that bank. None of the proceeds from the sale of the Bostron-Weiss cattle were paid to the intervenor.
Plaintiff bank sued Weiss and Bostron to recover the remaining balance of the loan, and Colorado High Plains intervened claiming an interest in any recovery which the bank might obtain against Bostron. Weiss was adjudicated a bankrupt and proceedings against him in this action were stayed. Since the intervenor's security interest attached only to the feed owned by Weiss, its right of recovery, if any, from Bostron must be premised on the benefit which Bostron individually received from the joint venture as a result of the Weiss feed being fed to the joint venture cattle.
The provisions of the Uniform Commercial CodeSecured Transactions, § 4-9-101, et seq., C.R.S.1973, govern this case. Section 4-9-315, C.R.S.1973, provides:
"(1) If a security interest in goods [1] was perfected and subsequently the goods or *966 a part thereof have become part of a product or mass, the security interest continues in the product or mass if:
(a) The goods are so manufactured, processed, assembled, or commingled that their identity is lost in the product or mass; or
(b) A financing statement covering the original goods also covers the product into which the goods have been manufactured, processed or assembled."
In light of the wording of this section, we conclude that cattle are neither a "product" nor a "mass" as these terms are used in the statute. The reference in subsection (a) to "manufactured, processed, assembled, or commingled" precludes any other interpretation. The feed which the cattle ate did not undergo any of these transformations, that is, it was not manufactured, processed, assembled or commingled with the cattle. Cattle consume food as motor vehicles do gasoline. Once eaten the feed not only loses its identity, but in essence it ceases to exist and thus does not become part of the mass in the sense that the code uses the phrase. Section 4-9-315, C.R.S.1973 (Comment 3), makes this evident:
"This section applies not only to cases where flour, sugar and eggs are commingled into cake mix or cake, but also to cases where components are assembled into a machine."
Feed as consumed by cattle is distinguishable from this notion of accession which the code's drafters visualized.
Moreover, since the financing statement did not specifically cover the product "into which the goods have been manufactured, processed or assembled" the language of § 4-9-315(1)(b), C.R.S.1973, does not support intervenor's claim.
Relying on § 4-9-306, C.R.S.1973, intervenor next contends that the cattle are proceeds of the feed as that term is defined in that portion of the code. The pertinent part of that statute states:
"(1) `Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected, or otherwise disposed of. . . .
(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds . . .." (emphasis supplied)
This contention also is unavailing for several reasons. First, the trial court found that the intervenor lost its interest in the proceeds because it authorized the disposition of its collateral, i. e., the feed, by Weiss to the Bostron-Weiss joint venture. See Farmers National Bank v. Ceres Land Co., 32 Colo.App. 290, 512 P.2d 1174 (1973). This finding is supported by evidence in the record and therefore is dispositive. However, we also conclude that even if the intervenor had not authorized the use of the feed subject to its security interest by the joint venture, nevertheless intervenor's interest still would not have survived its consumption by the cattle.
Weiss received nothing when he disposed of the collateral by feeding it to the joint venture cattle. As noted in our discussion of § 4-9-315, C.R.S.1973, the collateral was consumed, and there are no traceable proceeds to which the security interest may be said to have attached. To interpret § 4-9-306, C.R.S.1973, as intervenor urges would extend the security interest of one in the position of the intervenor to the parts of the butchered animal, into the supermarket, and ultimately into the hands of the consumers. We cannot attribute such legislative intent to the General Assembly when it adopted this section of the UCC.
Intervenor's final contention is that by § 4-9-307(1), C.R.S.1973, it had an interest in the cattle which ate the feed. That section of the code provides:
"A buyer in ordinary course of business. . . other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even *967 though the security interest is perfected and even though the buyer knows of its existence." (emphasis supplied)
Assuming, without deciding, that the joint venture was a buyer in the ordinary course of business from Weiss, a cursory reading of this portion of the code would suggest, as intervenor asserts, that its security interest continues into the cattle. However, the joint venture did not sell the feed; rather, it sold the cattle to which it was fed. As previously noted, in our analysis of § 4-9-315, C.R.S.1973, the collateral in which the security interest was initially taken is, after having been fed to the cattle, non-existent, and thus buyers of the cattle cannot reasonably be equated with buyers of the feed in which there exists a security interest.
In summary then, we hold that a security interest in feed does not in and of itself extend to the cattle which eat that feed by application of § 4-9-315, C.R.S.1973, nor do cattle which eat the feed constitute proceeds of the collateral by application of § 4-9-306, C.R.S.1973. We hold further that under the facts here, § 4-9-307(1), C.R.S. 1973 does not extend the security interest in the feed after its ingestion by the cattle.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.
NOTES
[1] There is no question but that the reference to goods in this section applies to the feed in question here. Section 4-9-105(f), C.R.S.1973, provides:

"`Goods' includes all things which are movable at the time the security interest attaches. . .. `Goods' also include the unborn young of animals and growing crops."
See also § 4-2-105, C.R.S.1973.