**COLORADO STATE BANK OF WALSH, Plaintiff-Appellant,**

**v.**

**Pauline HOFFNER, Personal Representative of the Estate of Alex Hoffner, Jerry Fales and Norval Fales d/b/a Fales Buyers Account, a Colorado partnership, Defendants-Appellees.**

No. 84CA0540.

Colorado Court of Appeals, Div. III.

April 4, 1985.

John Gehlhausen, P.C., John Gehlhausen, Lamar, for plaintiff-appellant.

Dinner, Hellerich & Lazar, Melvin Dinner, Charles J. Connell, Greeley, for defendants-appellees.

STERNBERG, Judge.

The Colorado State Bank of Walsh appeals the trial court's entry of summary judgment against it in its conversion claim against the defendants. The bank contends that the trial court should have directed summary judgment for it, instead of the defendants, because the defendants failed to comply with the Colorado bill of sale law. We affirm.

The bank properly filed a financing statement in Baca County, Colorado, listing the bank as the secured party, one Skip Cartwright as the debtor, and the covered property as "livestock of every kind and description." Also, Cartwright executed security agreements granting the bank a security interest in certain cattle. These security agreements contained standard printed form language requiring the debtor to obtain prior written consent of the bank to sell, transfer, or move the collateral.

Subsequently, defendant Fales, d/b/a Fales Buyers Account, contacted the president of the bank, Mr. Ingle, by telephone while Cartwright was present in Ingle's office. Fales told Ingle of a prospective sale of the cattle, the terms thereof, including the fact that they would be moved to Wyoming. At this time Ingle approved of this sale and did not require that Cartwright obtain a written consent from the bank; nor did he inform either Fales, or the buyer, Hoffner, of any restrictions, *e.g.*, that the proceeds from the sale should be delivered to the bank and be placed in an escrow account.

Thereafter, Cartwright authorized Fales to act as his sales agent and to enter into a contract for the sale of cattle to Hoffner. Hoffner made a down payment on the contract to Cartwright, the cattle were moved to Wyoming, and delivered to Hoffner. Hoffner paid Cartwright the balance of the purchase price, but Cartwright did not pay the debt he owed the bank. Cartwright had not obtained a formal bill of sale when he purchased the livestock, and when he sold them to Hoffner, Cartwright did not provide Hoffner with a formal bill of sale.

The bank contends that, because the defendants did not comply with the livestock bill of sale requirements, § 35–54–101, et seq., C.R.S., title did not pass to the defendants, and they are therefore liable in conversion. We disagree.

It is undisputed that neither Hoffner nor Cartwright obtained complying bills of sale when they purchased the cattle. Because both parties to the transaction failed to comply with the bill of sale laws, the Uniform Commercial Code determines the passage of title. *See Cugnini v. Reynolds Cattle Co.*, 687 P.2d 962 (Colo. 1984). Under the Uniform Commercial Code, title to the cattle passed to Hoffner at the time and place that Cartwright, the seller, completed his performance in regard to physical delivery of the cattle. Section 4–2–401(2), C.R.S. Also, Hoffner acquired good title to the cattle even though Cartwright failed to remit the proceeds of the sale to the bank. *See* § 4–2–403(1), C.R.S. Because good title passed to Hoffner, the bank has no claim in conversion against him for not having obtained a bill of sale.

We also disagree with the bank's contention that summary judgment should have been issued in its favor because it still had a security interest in the cattle. Rather, we agree with the trial court that summary judgment in favor of defendants Hoffner and Fales was appropriate because the bank had waived its security interest in the collateral.

The standard form language of the security agreement required that Cartwright obtain the written consent of the bank to sell or otherwise move the collateral. However, the trial court found that the normal trade practice of the bank was never to require its debtors to obtain written permission to sell the collateral. Also, the court found that, in its course of dealings with Cartwright, the bank had never required him to obtain written permission to sell. In this case, the president of the bank consented to the sale of the cattle, and told a third party to go ahead with that sale. These facts and circumstances support the trial court's findings that the bank did in fact expressly authorize the sale of the cattle to Hoffner, and that therefore, under § 4–2–208(3), C.R.S., no written authorization for the sale was required.

Because the bank authorized the disposition of the collateral without informing the buyer or the sales agent that it was reserving its right to the collateral if the seller did not make the required payments, it thereby lost its security interest in that collateral. *See* § 4–9–306(2), C.R.S.; *First National Bank v. Bostron*, 39 Colo.App. 107, 564 P.2d 964 (1977). Therefore, the trial court properly entered summary judgment in favor of defendant Hoffner.

Likewise, defendant Fales, as sales agent, was also relieved of any liability for the value of the property, since the bank did consent and acquiesce in the sale of the collateral. *See Colorado Bank & Trust Co. v. Western Slope Investments, Inc.*, 36 Colo.App. 149, 539 P.2d 501 (1975). Therefore, the trial court also properly entered summary judgment in favor of defendant Fales.

Judgment affirmed.

TURSI and METZGER, JJ., concur.