FARMERS COOPERATIVE ELEVATOR COMPANY, Earlham, Iowa, Appellant,

v.

UNION STATE BANK, Appellee,

Rodger O. Cockrum and International Barter Corporation, Defendants.

No. 86–680.

Supreme Court of Iowa.

July 22, 1987.

T. Scott Bannister of Hanson, Bjork & Russell, Des Moines, for appellant.

John E. Casper of Flander & Casper, Winterset, for appellee Union State Bank of Winterset.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Rodger Cockrum operated a farm and hog confinement operation in Madison County, Iowa. For several years financing for a substantial portion of the operation came from Union State Bank of Winterset (Union State). In February 1981, Union State loaned Cockrum a large sum of money and took a security agreement covering all equipment and fixtures, including but not limited to sheds and storage facilities, used or acquired for use in farming operations, whether now or hereafter existing or acquired; all farm products including but not limited to, *livestock, and supplies used or produced in farming operations whether now or hereafter existing or acquired....*

(Emphasis added.)

In December 1983 and January 1984, Cockrum entered into several purchase money security agreements with Farmers Cooperative Elevator Company (CO-OP) for livestock feed. *See* Iowa Code § 554.-9312 (1983). For each transaction, CO-OP filed a financing statement with the Secretary of State, which stated:

This is a purchase money security interest which covers Collateral described as all feed sold to Debtors by Secured Party and all of Debtors' feeder hogs now owned or hereafter acquired including ... additions, replacements, and substitutions of such livestock, including all issues presently or hereafter conceived and born, the products thereof, and the proceeds of any of the described Collateral.

Cockrum defaulted on his obligations to both Union State and the CO-OP. CO-OP commenced an action against Cockrum seeking possession of collateral. (International Barter Corporation was also joined as a defendant, but its petition under chapter 11 of the Bankruptcy Act stayed further proceedings against it, and it is not involved in the present action.)

Union State filed a statement of indebtedness and requested that its security interests be established as a first security lien on Cockrum's hog inventory and any sale proceeds therefrom. CO-OP responded by filing an amendment to its petition, joining Union State as a defendant and alleging that its right to the hogs is superior to Union State's.

On CO-OP's motion to adjudicate law points, the district court ruled that Union State's security interest in the hogs was prior and superior to the CO-OP's. CO-OP has appealed from that decision.

We first address CO–OP's argument that its interest in the livestock and proceeds therefrom is superior to Union State's under section 554.9312(4). That section provides:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty days thereafter.

"Purchase money security interests" are defined in section 554.9107:

A security interest is a "purchase money security interest" to the extent that it is

a. taken or retained by the seller of the collateral to secure all or part of its price; or

b. taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Union State concedes that CO–OP held a purchase money security interest in the feed. The question, however, is whether such a priority interest continues in livestock which consume the feed.

▪ In essence, one who takes a purchase money security interest under section 554.9107(a) is the equivalent of the old conventional vendor—a seller who has, in effect, made a loan by selling goods on credit. *See* J. White & R. Summers, *Uniform Commercial Code* § 25–5, at 1043 (2d ed. 1980). Put more simply, a purchase money security interest "is a secured loan for the price of new collateral." Henderson, *Coordination of the Uniform Commercial Code With Other State and Federal Law in the Farm Financing Context*, 14 Idaho L.Rev. 363, 375 (1978). In this case, CO–OP took the purchase money security interests to secure the price of the feed, not the hogs. Consequently, by definition, CO–OP does not have a purchase money security interest in the hogs.

CO–OP, nevertheless, argues that their priority interest in the feed continues to be superior in the hogs pursuant to section 554.9203(3) because the hogs are "proceeds" of the feed. That section provides, "[u]nless otherwise agreed a security agreement gives the secured party the rights to proceeds provided by section 554.-9306." Subsection 1 of section 554.9306 defines proceeds to include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds."

CO–OP contends that the "other disposition of collateral" language in section 554.-9306 includes ingestion and the biological processes involved when livestock consume feed, and as a result, fattened livestock are proceeds of the feed they consume. Such an argument was rejected in a case on all four hooves, so to speak. In *First National Bank of Brush v. Bostron*, 39 Colo.App. 107, 564 P.2d 964, 966 (1977), the court emphasized that "[the livestock producer] received nothing when he disposed of the collateral by feeding it to the … cattle … the collateral was consumed, and there are no traceable proceeds to which the security interest may be said to have attached."

▪ We agree with the result reached by the Colorado court. Ingestion and biological transformation of feed is not a type of "other disposition" within the contemplation of section 554.9306. For UCC purposes, the hogs are not proceeds of the feed.

CO–OP also argues that it should prevail over Union State pursuant to section 554.-9315(1), which provides in part:

If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass if

a. the goods are so manufactured, processed, assembled or commingled that their identity is lost in the product or mass….

CO–OP contends that its superior interest in the feed continued in the hogs because the feed became commingled with the hogs.

Section 9–315 of the Uniform Commercial Code is probably the least litigated and

discussed section of article 9. *See Hawkland Uniform Commercial Code Series* § 9–315:01, at 256 (1986) (hereinafter *Hawkland*). The only reported case examining this question is *Bostron*. There, the court concluded

> that cattle are neither a "product" nor a "mass" as these terms are used in the statute. The reference in subsection (a) to "manufactured, processed, assembled, or commingled" precludes any other interpretation. The feed which the cattle ate did not undergo any of these transformations, that is, it was not manufactured, processed, assembled or commingled with the cattle.... Once eaten the feed not only loses its identity, but in essence it ceases to exist and thus does not become part of the mass in the sense that the Code uses the phrase.

*Bostron*, 564 P.2d at 966.

Examining the *Bostron* decision and the question presented by the present case, one Uniform Commercial Code commentator has said:

> Other than section 9–315, no Code provision clearly suggests a contrary result, and section 9–315 does not seem to apply since the goods have not been manufactured, processed or commingled. Rather, their identity has been lost through ingestion, a process apparently not contemplated by section 9–315.

*Hawkland* at 262.

When construing a statute, we search for an interpretation that is sensible, workable, practical and logical. *Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985). CO–OP's argument, although creative, stretches the language of section 554.9315 beyond our interpretation guideposts.

Because of our disposition on the merits, we need not address Union State's procedural issues. We have considered all arguments raised and find no error.

AFFIRMED.