In re David J. RAMAKER and Jean A. Ramaker, Debtors.

WHITE FRONT FEED & SEED, DIVISION OF PAUL LAMMERS & SONS, INC., Plaintiff,

v.

STATE NATIONAL BANK OF PLATTEVILLE, a Corporation, David J. Ramaker and Jean A. Ramaker, Defendants.

ROEDER IMPLEMENT, INC., Plaintiff,

v.

STATE NATIONAL BANK OF PLATTEVILLE, a Corporation, David J. Ramaker and Jean A. Ramaker, Defendants.

Bankruptcy No. R85–01839D.
Adv. Nos. X89–0175D, X89–0179D.

United States Bankruptcy Court, N.D. Iowa.

March 28, 1990.

clude charging a purchaser with constructive notice of unrecorded equity interests of third-party mortgagees.

Victor Sprengelmeyer, Dubuque, Iowa, for debtors.

Chad Leitch and Stephen Krumpe, Dubuque, Iowa, for White Front Feed & Seed.

H. Raymond Terpstra, II, Cedar Rapids, Iowa, Patrick Clare, Platteville, Wis., for State Nat. Bank of Platteville.

C.J. May, III, Dubuque, Iowa, for Roeder Implement, Inc.

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

WILLIAM L. EDMONDS, Bankruptcy Judge.

Before the court are three motions for summary judgment filed in these consolidated adversary proceedings. Motions have been filed by White Front Feed & Seed, Division of Paul Lammers & Sons, Inc. (WHITE), David J. Ramaker and Jean A. Ramaker (RAMAKERS) and State National Bank of Platteville (BANK). Oral argument took place by telephone on March 20, 1990.

### I.

Summary judgment is appropriate when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 749 (8th Cir.1982); Bankr. R. 7056. The facts are considered in the light most favorable to the non-movant and the non-movant is entitled to all reasonable inferences which may

be derived from the underlying facts as shown by the pleadings, depositions and affidavits presented. *Sommers* at 749–50. Although findings of fact are not required in the determination of these motions, they can be helpful to any reviewing court and to the litigants. *Klinge v. Lutheran Charities Ass'n. of St. Louis*, 523 F.2d 56, 62 (8th Cir.1975).

## II.

### DISCHARGE

#### *(Motions of White and Ramakers)*

With leave of court, White amended its complaint against Ramakers to seek a determination that obligations of Ramakers to White, incurred during the chapter 11 case, are not discharged in this bankruptcy case.[1]

White and Ramakers agree that as to the issue of discharge, there are no genuine issues of material fact. The following is a brief summary of the facts relevant to the motions as to discharge. David and Jean Ramaker filed their voluntary petition under chapter 11 of the Code in 1985. After the filing, they operated the farm business as debtors-in-possession. During the pendency of the chapter 11 case, White supplied feed, seed and fertilizer to the Ramakers. It did so on more than one occasion, and it was paid for the goods supplied. White supplied seed, feed, and fertilizer on credit to the Ramakers during 1988. On January 6, 1989, Ramakers voluntarily converted their chapter 11 case to a case under chapter 7. At the time of the conversion, Ramakers' unpaid bill to White amounted to $14,841.42 plus any allowable accrued interest. The feed was for Ramakers' pigs. The seed and fertilizer were used to plant and fertilize a 1988 crop. The expenses were reasonable and necessary to the Ra-

makers' operation of the farm. On May 11, 1989, the court's order of discharge was filed. The order contained the following language: "The debtor is released from all personal liability for debts existing on the date of commencement of this case, or deemed to have existed on such date pursuant to § 348(d) of the Bankruptcy Code (Title 11, United States Code)."

White maintains that under § 348(d) of the Bankruptcy Code, the debt incurred by Ramakers during the chapter 11 case is not discharged. It seeks such a determination by the court in its motion for summary judgment. Ramakers resist and move for summary judgment asking the court to find that the expenses incurred with White during the chapter 11 case were discharged. This dispute involves the interplay among 11 U.S.C. §§ 727(b), 503(b)(1)(A), and 348(a), (b), and (d).

White argues that 11 U.S.C. § 348(d) clearly eliminates administrative expenses from those post-petition, pre-conversion claims from which the debtor is discharged. Section 348(d) states in pertinent part that:

[a] claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under § 1112 ... of this title, other than a claim specified in § 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

It is White's contention that this subsection specifically excepts from discharge those administrative expenses incurred by debtors after the filing of a chapter 11 until its conversion. If White is correct in its reading of this subsection, then the matter might be resolved by determining whether the expenses incurred by Ramak-

1. White's proposed "First Amendment to Complaint" containing its new Count III was attached to its Motion for Leave to Amend filed with the court February 22, 1990. The Motion for Leave to Amend was granted, and although White has never filed a separate "First Amendment to Complaint," defendants Ramaker filed their answer to the amendment on March 13, 1990. White's Count III is also a subject of its motion for summary judgment and is the sub-

ject of Ramakers' motion for summary judgment. Therefore, although the First Amendment to Complaint has not been officially filed, the court considers it has jurisdiction of the matter, and will determine the motions for summary judgment with respect to it. The filing omission may result from the fact that the Bankruptcy Court has not adopted District Court Local Rule 14(k).

ers were administrative claims within the meaning of § 503(b). There is no dispute that during the chapter 11 case, White sold feed to Ramakers for Ramakers' swine. There is also no dispute that White sold, on credit, seed and fertilizer for the planting of a 1988 crop.

Section 503(b) of the Code provides that administrative expenses shall be allowed for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). There is a dispute between White and Ramakers over whether the expenses incurred preserved the estate. Ramakers argue that because all personal property in the estate was secured to the State National Bank of Platteville, there was no estate to preserve. Furthermore, even if Ramakers would concede that the feed for the Ramakers' swine was an administrative expense, they still would argue that seed and fertilizer for the 1988 crop did not preserve an estate, but merely created new property of the estate.

■ While it is true that all post-petition expense is not entitled to administrative priority, the court concludes that the expenses incurred with White by Ramakers during the chapter 11 case are so entitled.[2] Often a two-part test is used to determine whether an expense should have administrative priority status. Such status will be granted if the court finds that the debt arises from a transaction with the debtor-in-possession and is "beneficial to the debtor-in-possession in the operation of the business." *In the Matter of Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984) citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). Ramakers apparently argue that because the bankruptcy failed and because Ramakers had granted a security interest in its personalty to bank, White's credit sale of feed, seed and fertilizer had no beneficial effect on the estate. The outcome of the bankruptcy, however, is not the test. It is whether the transaction was beneficial to the debtor-in-possession "in the operation of the business." *Id.* Despite the fact that the reorganization failed, and despite the evidence that the 1988 crop

was a poor one, White's credit sales of goods were still beneficial to the debtors-in-possession in the operation of the farm business. This court does not accept the hindsight argument that feed, seed, and fertilizer are not necessary expenses of a crop and livestock farming operation merely because the reorganization later fails. Furthermore, there is no question that the Ramakers were operating their farm business as debtor-in-possession. Section 364(a) of the Code gives administrative expense priority to creditors who extend credit to the debtor-in-possession in the ordinary course of the debtor-in-possession's business.

■ The court concludes that the claim of White is an administrative expense under 11 U.S.C. § 503(b). Having concluded that White's claim is an administrative claim arising in the chapter 11 case, the court must now reach the discharge issue. I do not agree that White's claim is not discharged in this case. The court does not believe that § 348(d) was intended to eliminate from the effect of the discharge those claims arising after the filing of the chapter 11 case but before its conversion to chapter 7. Section 348(d) deals with the treatment of claims. It should be construed to provide that non-administrative claims arising in a chapter 11, upon conversion, are treated as prepetition debts. Chapter 11 administrative claims are provided for differently. They retain their priority status and are paid ahead of unsecured creditors in the case. They are inferior, however, to chapter 7 administrative expenses. 11 U.S.C. § 726(a)(1) and § 726(b). The latter provides that in a case converted from chapter 11 to chapter 7, an allowed administrative expense claim incurred during the chapter 7 case has priority over an allowed administrative expense incurred under any other chapter before the conversion. *Still v. United Pipe and Supply Co., Inc. (In re W. L. Jackson Mfg. Co.),* 50 B.R. 498, 503 (Bankr.E.D.Tenn. 1985).

**2.** *In re Glover, Inc.,* 43 B.R. 322, 325 (Bankr.N. M.1984).

Section 727(b), on the other hand, deals with the discharge of these chapter 11 administrative claims. Read in conjunction with § 348(a) and (b), it provides that unless a debt is excepted from discharge under § 523, a discharge under § 727(a) discharges the debtor from all debts "that arose before the date of the order for relief under this chapter." That phrase is given meaning by 11 U.S.C. § 348(b) which states in pertinent part that in § 727(b), " '[t]he order for relief under this chapter' in a chapter to which a case has been converted under § ... 1112 ... of this title means the conversion of such case to such chapter." Thus, § 727(b) specifically discharges the debtor from all debts arising before the date of conversion. The only exceptions are those provided under 11 U.S.C. § 523. White has raised no § 523 grounds for denying Ramakers a discharge of its administrative claim arising during the chapter 11 case.

Two cases do appear to support White's argument. They are *Volk of Philadelphia, Inc. v. Gelfand (In re Gelfand)*, 47 B.R. 876 (Bankr.E.D.Pa.1985) and *Birmingham Electric Battery Co., Inc. v. Elmer's Auto Parts (Matter of Elmer's Auto Parts)*, 34 B.R. 63 (Bankr.N.D.Ala.1983).

In *Gelfand*, a creditor filed a complaint for a determination of the dischargeability of a debt under § 523(a)(2)(A). The debt was incurred during the debtor's chapter 11 case, before conversion to chapter 7. The court found § 523 applicable because of the operation of §§ 727 and 348. The court reached the dischargeability issue because the claim was found not to be within the administrative expense exception to § 348(d). It ruled that the indebtedness was not excepted from discharge under § 523. The court's brief reference to § 503(b) leads the undersigned to believe, however, that the result *may* have been different in that case had the claim been an administrative claim. The undersigned does not place great weight on the decision because the court did not find it necessary to consider whether the debt would have been discharged had it been an administrative claim not excepted under § 523.

Also favorable to White is *Elmer's Auto Parts*. At the very outset, the court discussed the importance of answering the question of whether chapter 11 administrative expenses are discharged when the case is converted to chapter 7. The court posed the question, "[D]oes the Debtor get a discharge from postpetition administrative expense as 'debts?' " *Elmer's Auto Parts* at 65. The court determined that the creditor's claim was a priority administrative expense, but there being no funds available to pay it, the court ruled that the creditor was "free to proceed against the Debtor despite the Debtor's discharge in bankruptcy in any Court having jurisdiction...." *Id.* at 66.

Although the court ruled that the debt was not discharged, the undersigned's reading of the case leads it to believe that it may have been decided under § 523 and not on the issue initially raised. The creditor had objected to the dischargeability of the debt under § 523(a)(2) and the court said that it was called upon to test the transaction under § 523. The plaintiff obtained judgment in its favor, but was stayed from proceeding against the debtor by civil or *criminal* process so long as the debtor made certain monthly payments.

To the extent that the case may stand for the proposition that chapter 11 administrative expenses are not discharged when the case is converted to chapter 7, this court respectfully disagrees with it. To the extent either of the foregoing cases can be said to rest on grounds other than exceptions to discharge under § 523, the court declines to follow them.

There is support for the proposition that the purpose of § 348(d) is to give chapter 11 administrative claimants priority over unsecured claims when a case is converted from chapter 11 to chapter 7. The unsecured claims include pre-petition unsecured claims and post-petition, non-administrative unsecured claims. While this priority status for chapter 11 administrative claims is superior to the status of unsecured creditors, it is inferior to the administrative claims which arise during the chapter 7 case. *In re Kaleidoscope of High Point,*

*Inc.*, 56 B.R. 562, 564–565 (Bankr.N.D.N.C. 1986); *In re Blue Ribbon Delivery Service, Inc.*, 31 B.R. 292, 293 (Bankr.W.D.Ky. 1983); *In the Matter of West Johnson Corp.*, 96 B.R. 182, 184 (Bankr.W.D.Wis. 1988).

From my reading of the Code sections, I believe that § 348(b) was intended to deal with the treatment of claims and not with the discharge of claims. The discharge of administrative claims arising during a chapter 11 case which is later converted to a chapter 7 case is dealt with exclusively by 11 U.S.C. § 727(b) with exceptions provided therein under § 523. *F & M Marquette Nat. Bank v. Richards*, 780 F.2d 24, 26 (8th Cir.1985).

Therefore, the court concludes that although White's claims are administrative claims arising in the chapter 11 case, they are discharged under 11 U.S.C. § 727(a) by virtue of § 727(b), and White may not obtain personal judgment against Ramakers for the amount of such claims.

### III.

*Section 506(c)*

White and Roeder seek remedies under 11 U.S.C. § 506(c) against Ramakers and Bank. That section permits a trustee to recover from secured property the reasonable and necessary costs and expenses of preserving or disposing of that property. Ramakers have moved for summary judgment on this issue as has Bank. Both argue that neither White nor Roeder have standing to seek a § 506(c) remedy.

In addition to those facts set out earlier in this decision, the court finds the following additional facts relevant to the issue of standing. While in chapter 11, Ramakers operated their farm business under 11 U.S.C. § 1108. No trustee had been appointed in the chapter 11 case, and therefore the powers and duties of the Ramakers as debtors-in-possession flowed from § 1107. During the chapter 11 case, Ramakers rented a combine from Roeder to use in harvesting the 1988 crop. At the time of the conversion to chapter 7, Ramakers owed Roeder approximately $10,500.00

in lease payments. The rental was in the ordinary course of the debtors' operation of their farm. It would qualify as an administrative expense under the chapter 11 case. Roeder and White were both pre-petition creditors and were aware when they provided goods or services to Ramakers that Ramakers were debtors in a chapter 11 case. Both creditors served on the Unsecured Creditors Committee which was represented during the course of the chapter 11 by attorney James O'Brien. State National Bank of Platteville was a secured creditor prior to the filing of the chapter 11 case, and after its filing, it entered into an adequate protection agreement covering its security interest in debtors' property. The stipulation resulted in an order entered on December 19, 1985 in Contested No. 3340 by which the bankruptcy court approved the use of cash collateral and adequate protection of Bank's security interest. The order continued the lien claims of Bank in property of the debtors and permitted attachment of Bank's security interest to post-petition estate property. The order also permitted debtors to borrow funds from Bank, and it granted a lien or security interest on all property of the estate to secure such advances. The liens granted by the order were granted to secure newly advanced funds, cash collateral used or consumed, and to secure other indebtedness of the debtors-in-possession to the bank. The order provided superpriority status to the bank and further provided:

7. That Bank and its collateral shall not be subjected to any claims for administrative expenses arising under or by virtue of Bankruptcy Code Section 503, 506(c), or any other provision of the Bankruptcy Code or state or federal law. The Court being cognizant of the provisions of Section 507(b) of the Bankruptcy Code and intends by this Order to expand upon the rights of creditor to "prime" all administrative expenses, to the extent it has not been otherwise given adequate protection by reason of Order of this Court or any other Orders of this Court, whether entered hereinbefore or hereinafter.

No advance notice was given to creditors of the stipulation or of the execution of this order. However, on December 31, 1985, the attorney for the Unsecured Creditors Committee notified White and Roeder as members of the Committee that the order had been entered. A letter to White and Roeder stated:

> I have received a copy of a Bankruptcy Court Order obtained by David Ramaker. This is a "Cash Collateral" Order which permits Ramaker to continue to operate and use the money he receives from sales of animals or grain. This was done with the consent of the State National Bank of Platteville and was done without a hearing. It appears at this time that this is in the best interest of the unsecured creditors because it allows Ramaker to continue to operate and gains time to secure funds under his litigation resulting from the insurance claim.
>
> If you have any questions, please feel free to call me.

On June 23, 1988, a stipulation was executed among the debtors-in-possession, Bank, and the Unsecured Creditors Committee modifying the cash collateral/adequate protection order. The modification resulted from a motion filed by the Unsecured Creditors Committee. The subscribed order was executed by the court on June 23, 1988. The modification provided that the lien of Bank could not exceed the value of its allowed secured claim plus a $20,000.00 crop loan and interest thereon for 1988 crop expense. Furthermore, debtors could not borrow additional monies from Bank without prior court order. The foregoing modification order was entered after the motion for modification had been noticed to creditors with opportunity for hearing.

After the case was converted to chapter 7, Bank filed an application to require the trustee to abandon Bank's collateral (Contested No. 1049). Hearing was scheduled for March 22, 1989. The court was notified that the trustee and Bank had reached an agreement and that the trustee would file an abandonment of the collateral subject to the motion. The court executed an order, filed March 22, 1989, which required the trustee to give notice of the proposed abandonment to all creditors and parties-in-interest. This notice was never given. Bank apparently took possession of the "abandoned" collateral and entered into a reaffirmation agreement with Ramakers permitting them to keep or buy back some or all of the collateral. The evidence is insufficient to show whether any of the collateral related to White's or Roeder's administrative expenses still exists.

## STANDING

The Code's § 506(c) states that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

Roeder and White seek a recovery from Ramakers and Bank to the extent of defendants' interests in any of Bank's collateral which had been property of the bankruptcy estate, arguing that their claims arose as reasonable, necessary costs of preserving the estate. They do not seek to match the expenses to any particular items of collateral.

In their motions for summary judgments, Ramakers and Bank each argue that White and Roeder have no standing to assert such claims under § 506(c) because that Code section reserves such right to the trustee. The trustee has declined to exercise it.

Thus, the dispute in this case centers on whether an administrative claimant in a chapter 11 case may assert its claims against the secured party or its collateral after the conversion of the reorganization case to chapter 7 if, upon request, the trustee refuses to seek relief under § 506(c).

Specifically, the issue is one of standing. Roeder and White contend they have standing to seek relief under § 506(c). Debtors and Bank argue that they do not, and that such a remedy is limited to the trustee or debtor-in-possession by the clear language of the statute.

There is certainly no uniformity among the courts on this issue. *Collier on Bankruptcy* cites cases on both sides of the issue and comments that those limiting the availability of recovery under § 506(c) to trustee and debtors-in-possession represent the minority view. 3 *Collier on Bankruptcy* (15th edition) § 56.06, pages 506–57, 506–68. The undersigned acknowledges the split in authority, but from the number of cases on both sides of the issue, finds it curious that one viewpoint or the other could so easily be considered the minority view. Several cases support the proposition that an administrative claimant may seek recovery from a secured creditor's collateral under § 506(c). The only circuit case on this issue is *McKeesport Steel Castings Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91 (3rd Cir.1986). The court permitted an individual creditor to pursue a claim against a secured creditor under § 506(c). It did so on the basis that the creditor had a colorable claim and was the only creditor who would zealously pursue it. *Id.* at 94.

In *In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr.N.D.Ill.1987), the court permitted lessors to pursue a claim under § 506. There were no unencumbered assets in the estate for the payment of the lessor's claim. A landlord was held to have standing under § 506(c) to seek recovery from a secured creditor in *Guy v. Grogan (In re Staunton Industries, Inc.)*, 74 B.R. 501 (Bankr.E.D.Mich.1987). Other cases permitting claimant direct recovery from the secured party's collateral are: *In re DLS Industries, Inc.*, 71 B.R. 679 (Bankr.D. Minn.1987); *In re Birdsboro Casting Corp.*, 69 B.R. 955 (Bankr.E.D.Pa.1987); *In re Wyckoff*, 52 B.R. 164 (Bankr.W.D.Mich. 1985); *In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985); and *National Bank of North America v. Isaac Cohen Clothing Corp. (In re Isaac Cohen Clothing Corp.)*, 39 B.R. 199 (Bankr.S.D.N. Y.1984).

Cases adhering to the viewpoint that only the trustee or debtor-in-possession may seek a recovery under § 506(c) are: *Central States, Southeast and Southwest Areas Pension Fund v. Robbins (In re Interstate Motor Freight System IMFS, Inc.)*, 71 B.R. 741 (Bankr.W.D.Mich.1987); *see also Central States, Southeast and Southwest Areas Pension Fund v. Robbins (In re Interstate Motor Freight System IMFS, Inc.)*, 86 B.R. 500 (Bankr.W.D. Mich.1988); *In re Dakota Lay'd Eggs*, 68 B.R. 975 (Bankr.D.N.D.1987); *In re J.R. Research, Inc.*, 65 B.R. 747 (Bankr.D.Utah 1986); *In re Groves Farms, Inc.*, 64 B.R. 276 (Bankr.S.D.Ind.1986); *In re Air Center, Inc.*, 48 B.R. 693 (Bankr.W.D.Okla. 1985); *In re Fabian*, 46 B.R. 139 (Bankr.E. D.Pa.1985); *Thomas v. Ralston Purina Co. (Matter of Thomas)*, 43 B.R. 201 (Bankr.M.D.Ga.1984); *In re Codesco, Inc.*, 18 B.R. 225 (Bankr.S.D.N.Y.1982).

A previous case decided in this district has been cited by other courts for the proposition that standing is limited under § 506(c). *In re Manchester Hides, Inc.*, 32 B.R. 629 (Bankr.N.D.Iowa 1983). However, that decision specifically left open the issue of whether claimants other than debtor's attorney could invoke § 506(c). *Id.* at 633, n. 7.

This question must now be decided. I am of the opinion that only the trustee or a debtor-in-possession may seek recovery from a secured party's collateral to compensate for expenses for disposal or preservation of that collateral. First, the clear language of the statute says so, and like the court in *Codesco, Inc.*, I do not believe that anything in § 506(c) appears intended to create an independent cause of action in favor of those entities providing goods or services on credit to an estate. *In re Codesco, Inc.*, 18 B.R. at 230.

Generally, an estate bears its own costs of administration. Section 506(c) is an exception which recognizes that the estate and the unsecured creditors should not be required to bear the costs or expenses incurred by the estate to care for a secured creditor's collateral. *Brookfield Production Credit Ass'n v. Borron*, 738 F.2d 951, 953 (8th Cir.1984).

White and Roeder provided goods or services to the estate. These were for the operation of the farm business. The Code

created generally adequate incentives for these creditors to provide such credit to the estate under § 364. The expenses are allowable as administrative expenses under § 503(b)(1). Moreover, these creditors could have sought a security interest under § 364(c). When the case was converted to chapter 7, the trustee filed an abandonment of the bank's collateral. The abandonment was without notice and was therefore defective. Lacking such notice, the court does not consider the trustee's action effective, but that conclusion does not alter the court's decision. The trustee did not seek to dispose of it or preserve it and did not expend any funds with White or Roeder for such purposes. Section 506(c) permits a trustee who has incurred expenses or expended estate monies to recover the expenses from the collateral when those expenses were incurred or paid for the preservation or disposition of it. Such an ability leaves estate assets for distribution to creditors not holding secured claims. In the present case, there was no money expended by the trustee but more importantly, there are no assets which will be distributed to unsecured creditors in any event. This court does not see how under such a situation, § 506(c) can be read to give Roeder and White separate causes of action against the secured creditor.

More than one court favoring such claimants' obtaining a recovery from the secured creditor, has decried the fact that such claimants would be without remedy if § 506(c) is read too strictly. It is not that they are without remedy because their remedy lies under § 503(b)(1) and the distribution provided under § 726. Their problem is that there is no money in the estate. While that may be unfortunate, it does not warrant reading words into § 506 which are not there.

The court concludes that Roeder and White lack standing under § 506(c) to obtain recovery from the secured creditor.

### RECOVERY FROM DEBTORS OR BANK ON EQUITABLE GROUNDS

■ Because Roeder and White cannot recover from debtors or Bank under § 506(c), the question still remains whether plaintiffs can recover from debtors or bank on equitable grounds under the same facts. Plaintiffs contend that if they are not allowed to recover under § 506(c), the facts and circumstances of this case should lead this court to give them the same relief under its equitable powers. It is true that bankruptcy courts possess broad equitable powers. They must be exercised carefully, however, so as not to create substantive rights which do not otherwise exist. *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 274 (8th Cir.1983), *cert. denied* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). It would seem incumbent that the plaintiffs point to some legal or equitable theory entitling them to recover from these defendants. I conclude that under the facts alleged, there is no such theory by which plaintiffs can recover from Ramakers or Ramakers property consistent with bankruptcy law and Ramakers' discharge under § 727(a). There is no exception to this discharge under § 523 which is apparent to this court under the undisputed facts. Although the plaintiffs argue that Ramakers are necessary parties if they are to recover out of the bank's collateral, plaintiffs have not shown they are entitled to recover out of the collateral pledged by Ramakers to bank. This court will not use its equitable powers to permit plaintiffs to recover from bank and debtors under a § 506(c) theory. *In re Groves Farms, Inc.*, 64 B.R. 276, 277 (Bankr.S.D. Ind.1986).

Neither of the plaintiffs has cited to the court any authority which supports the argument that plaintiffs obtained a lien in debtors' property and bank's collateral during the course of the chapter 11 case. The use of fertilizer and seed, standing alone, did not give White a security interest in the resultant crop, nor did the use of White's feed give it a security interest in the livestock to which it was fed. *See Farmers' Coop. Elevator Co. v. Union State Bank*, 409 N.W.2d 178, 180 (Iowa 1987). In addition to not seeking relief under § 364 of the Bankruptcy Code, White did not seek to

perfect a statutory lien under Iowa Code § 570A.4.

White and Roeder argue that their positions in this matter should be enhanced by the fact that an original cash collateral order entered by the court at the inception of the Ramaker bankruptcy, was not on notice to all creditors and parties-in-interest. That no such pre-approval notice was given is true. However, the plaintiffs' positions as post-petition claimants (their pre-petition status is irrelevant) is not really affected by such lack of notice and it is this post-petition status as providers of goods by lease or sale which is before the court. Generally, unless such notice is requested, post-petition creditors would not receive notice of cash collateral agreements entered into post-petition. Both plaintiffs, however, were notified of the existence of the original cash collateral agreement because of correspondence from the attorney for the Unsecured Creditors Committee, a committee of which both were members. Moreover, at the time that White and Roeder extended goods to the debtors on credit in 1988, both were aware of the debtors' status as a debtor-in-possession.

 Based on the law and upon the undisputed facts, this court concludes that neither plaintiff is entitled to relief from Ramakers on legal or equitable grounds. To the extent that either plaintiff is entitled to relief from bank, it must depend upon whether bank did or said anything which would warrant permitting a recovery from it by plaintiffs. There is nothing in the undisputed facts, however, that indicates that the plaintiffs solely because of their status as post-petition creditors are entitled to a recovery from Bank.

 Whether bank either expressly or impliedly agreed to pay plaintiffs or was in some other way responsible for Ramakers' credit transactions with plaintiffs during the chapter 11, is disputed. As part of White's statement of disputed facts, there is submitted to the court White's response to interrogatory no. 1 which relates to the request for admission no. 7 served upon it. The interrogatory response states that, "David Ramaker represented to Bruce Lammers that the bank had approved of the expenses and would pay them." It appears to the court that at a minimum there is a disputed factual issue as to whether bank made or permitted representations to these creditors as to whether bank would permit or require that the plaintiffs' advances of credit would be repaid. The court concludes, therefore, that the issues between the parties cannot be entirely resolved by the motions for summary judgment. Trial will be necessary to determine whether bank by any authorized agent said or did anything which would justify plaintiffs' recoveries from bank for the costs of any goods or services supplied to debtors during the chapter 11 case.

## CONCLUSIONS OF LAW

1. Neither White nor Roeder may recover judgment against Ramakers as a matter of law.

2. Neither White nor Roeder may recover from bank under 11 U.S.C. § 506(c).

## ORDER

IT IS ORDERED that Ramakers' motion for summary judgment is granted and judgment shall enter that the complaints of White and Roeder against Ramakers shall be dismissed.

IT IS ORDERED that bank's motion for summary judgment filed against Roeder and White is denied.

IT IS ORDERED that White's motion for summary judgment against Ramakers is denied.

IT IS FURTHER ORDERED that trial, scheduled for April 16 and 17 shall go forward as scheduled.

SO ORDERED.