AFSCME/IOWA COUNCIL 61, State Police Officers Council, SEIU Local 341, and Iowa United Professionals, Appellees,

v.

STATE of Iowa and Governor Terry E. Branstad, Appellants.

No. 92–70.

Supreme Court of Iowa.

March 25, 1992.

Douglas E. Gross, James R. Swanger and James H. Gilliam of Brown, Winick,

Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellants.

Charles E. Gribble, Des Moines, and Larry P. Weinberg, Washington, D.C., for appellees.

Bonnie J. Campbell, Atty. Gen., Elizabeth M. Osenbaugh, Deputy Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for amicus curiae Bonnie J. Campbell, Atty. Gen. of Iowa.

HARRIS, Justice.

A wage dispute between the State and unions representing certain State employees culminated in arbitration awards pursuant to an Iowa statutory scheme which provides for collective bargaining for public employees. Legislation funding wage increases in accordance with the awards was passed by the General Assembly but was the subject of an item veto by the governor. The unions then brought this action to enforce the awards. The trial court determined that the awards are enforceable and we agree.

The case arose because, in these adverse economic times and in view of other public spending priorities, it has become extremely difficult to fund the increase. The State defends this suit to enforce the arbitration decisions at two levels.

At the most basic level the State contends a contract with it is not really a contract, or, if it is labeled a contract, the State need not perform. This argument rests on a number of disputed applications of settled constitutional and statutory rules. The question is: Can the government be made to perform in accordance with its contracts, or is the other party, by reason of constitutional and statutory rules intended to protect the public treasury, left to the vagaries of the political process? We think the State can indeed be required to comply.

A second question is whether the State can avoid liability on this contract on the basis of an escape clause in the statute which forms a part of the contract. The answer is no—not on these facts. This is because the clause does not allow the State to avoid its contractual liability merely by selecting spending priorities under its exclusive control. Our review on appeal is de novo. Iowa R.App.P. 4.

I. *Factual Background.*

Plaintiff unions, AFSCME/Iowa Council 61, State Police Officers Council, SEIU Local 341, and Iowa United Professionals, represent a substantial number of Iowa's public employees for purposes of collective bargaining. The unions are considered "employee organizations" as defined by Iowa Code section 20.3(4) (1989) and have been certified by the public employees relations board (PERB) as bargaining agents for their members.

In August 1990 negotiations began for a two-year collective bargaining agreement to succeed an existing agreement set to expire June 30, 1991. Negotiations and mediation were unproductive and ended in impasse with all three unions. Accordingly, as provided by Iowa Code section 20.22, the PERB arranged for arbitration between the State and each union. In each case the State's final offer was a one percent increase on July 1, 1991, a two percent increase on July 1, 1992, no step increases, and changes in insurance benefits. In each case the unions also presented a final offer which demanded a greater wage increase.

At separate hearings before each arbitrator, the State contended it could not fund the unions' requests due to budget constraints. The unions contended on the other hand that their wage demands could be funded if it were not for the funding of discretionary items, such as increased spending for education and economic development.

Each arbitrator selected the union's final offer (totaling—for the first year—an increase of $19.2 million for the contract-covered employees) rather than the State's final offer.[1] The governor instead respond-

---

**1.** Under § 20.22(11) the arbitrators are to select "the most reasonable offer, in its judgment, of

the final offers on each impasse item submitted

ed by submitting a revised budget to the legislature providing for a two percent salary increase for all state employees. The legislature thereafter voted to appropriate money to fund the arbitrators' awards and to fund a two percent salary increase for state employees not covered by the union contracts. 1991 Iowa Acts ch. 266, § 8. The governor then struck the appropriation funding the awards and pay increases for nonunion employees by exercising an item veto.[2] The legislature did not override the veto.

The unions brought the present action to enforce the arbitration awards pursuant to Iowa Code section 20.17(5) (collective bargaining agreement may be enforced by civil action in district court). Following trial, the court held that the awards constituted binding contractual agreements and that the covered employees were entitled to the increase in wages and interest. The State and governor then brought this appeal.

## II. *Exhaustion of Remedy.*

■ Following the arbitrators' awards, the State did not file a petition for judicial review pursuant to Iowa Code chapter 17A. The unions first point to holdings that an arbitrator's award is agency action. *Maquoketa Valley Community Sch. Dist. v. Maquoketa Valley Educ. Ass'n,* 279 N.W.2d 510, 512 (Iowa 1979); *Moravia Community Sch. Dist. v. Moravia Educ. Ass'n,* 460 N.W.2d 172, 177 (Iowa App. 1990). On the basis of these holdings and the requirement under Iowa Code section 17A.19(3) that a petition for judicial review must be filed within thirty days of final agency action, the unions contend jurisdiction was lost to even consider any State challenge to the arbitration awards. *See Sioux City Brick & Tile v. Employment Appeal Bd.,* 449 N.W.2d 634, 638 (Iowa 1989) (timely petition is jurisdictional prerequisite for judicial review of final agency action).

The trial court correctly rejected this contention because the cited authorities are

not in point. The State's challenge is directed to matters that arose after the thirty-day period following action of the arbitrators. The language of section 20.17(6) suggests that an enforcement action may be brought or defended after the thirty-day period ("No ... arbitrators' decision shall be valid or enforceable if its *implementation* would be inconsistent...") (emphasis added). The State does not seek review of agency action. Rather the State attempts to rely upon section 20.17(6), which provides a defense to the enforcement action established in section 20.17(5). There is a difference between judicial review of agency action and enforcement of an agency order. *See City of Des Moines v. Iowa Civil Rights Comm'n,* 343 N.W.2d 836, 840 (Iowa 1984) (orders finding civil rights discriminations under Iowa Code section 601A.17 res judicata on matters then in dispute, but not a bar to a later "new proceeding" for enforcement).

The courts did not lose jurisdiction over the enforcement dispute under Iowa Code section 20.17(5) for lack of a judicial review proceeding.

## III. *The Constitutional and Statutory Defenses.*

The parties all acknowledge that, under Iowa Code section 20.22(12), an arbitrator's decision on impasse items "shall be deemed to be the collective bargaining agreement between the parties." They also recognize Iowa Code section 20.22(13) which provides that "[t]he determination of the panel of arbitrators shall be ... final and binding ...," and that either party may sue to enforce it under Iowa Code sections 20.-17(5) and 20.23.

We have for many years held that the State is bound by contracts it enters. *Kersten Co. v. Department of Social Servs.,* 207 N.W.2d 117, 122 (Iowa 1973) (State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent.). We pre-

---

by the parties, or the recommendation of the fact finder...."

2. Under article III, § 16 of the Iowa Constitution the governor may disapprove any item in an appropriation bill.

viously recognized the binding contractual nature of arbitration under the Iowa public employment relations Act (Iowa Code chapter 20) in *Iowa State Education Association v. PERB*, 369 N.W.2d 793, 797 (Iowa 1985).

■ The State nevertheless contends it is not bound because arbitration determinations are subordinate to the appropriation process. Because of the governor's successful item veto, the argument goes, there has been no lawfully completed appropriation to fund the disputed wage increases.

As mentioned, the State anchors the argument in part in statutes it considers at odds with the enforcement of arbitration awards. The statutes include Iowa Code sections 8.30 (availability of appropriation), 8.38 (prohibits expenditure of funds in excess of appropriation), 8.39 (governs use and transfer of appropriations), 8.43 (salary adjustment fund), 12.5 (treasurer to pay from treasury only upon warrants of director of revenue and finance), 20.7 (public employer rights, including the right to maintain efficient government and administer budget), and 421.44 (obligations for reciprocal interstate tax enforcement).

The State also thinks three of our Constitution's most elemental prescripts are inimical to its contractual liability, and that the statute proclaiming liability must yield to the Constitution. The trial court decision to the contrary is thought to violate the Constitution's appropriation clause,[3] its doctrine of separation of powers and its prohibition against undue delegation of duties.[4]

The three constitutional arguments, which are closely interrelated, are presented from the perspective of the governor's responsibilities regarding the state budget [5] and corresponding authority to participate [6] with the legislature in the appropriation process.[7] The appropriation clause challenge centers on language in article III, section 24 that the creation of any legally binding entitlement must be by an appropriation "made by law." The State believes that its power to withhold appropriations must be read into every state contract. The State bolsters its position by pointing out that the legislature declined a proposal to enact a standing appropriation to fund arbitration awards. 1974 House Journal 782.

■ The separation of powers claim, under article III, section 1, is grounded in the belief that the spending of public money cannot be delegated to arbitrators or members of the judiciary. This is because the power to appropriate public funds rests exclusively with the General Assembly and the governor. The claim of improper delegation proceeds in the belief that the provisions for arbitration in chapter 20 lack adequate standards or safeguards to prevent arbitrary or illegal action.

The unions have a number of responses to the State's contentions. They point out that the governor's right to participate in the appropriation process, including his item veto power, though great, is subject to limited judicial review. *Welden*, 229 N.W.2d at 715. We think the standards and guidelines are adequate under the tests set out in *Farrell v. State Board of Re-*

---

3. Article III, § 24 of the Iowa Constitution states: "No money shall be drawn from the treasury but in consequence of appropriations made by law."

4. Article III, § 1 of the Iowa Constitution states: The powers of the government of Iowa shall be divided into three separate departments— the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

5. Iowa Code § 8.3(3) requires the governor to initiate and prepare a balanced budget for each regular legislative session.

6. The "essential" responsibility for appropriations rests with the General Assembly. *Welden v. Ray*, 229 N.W.2d 706, 709 (Iowa 1975).

7. Article III, § 16 of the Iowa Constitution requires every bill to be presented to the governor for approval or veto. And, as typical, two-thirds votes by both houses are required to override a veto. As mentioned at footnote 2 there is a provision for item vetoes in appropriation bills.

*gents,* 179 N.W.2d 533, 540 (Iowa 1970) (quoting *Spurbeck v. Statton,* 252 Iowa 279, 286, 106 N.W.2d 660, 664 (1960)), where we pointed out:

> It is now well established, "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

*See also Warren County v. Judges of the Fifth Judicial Dist.,* 243 N.W.2d 894, 898 (Iowa 1976). The arbitrators must select the offer thought to be most just. Supporting public policy is stated in Iowa Code section 20.1. Factors for consideration are set forth in section 20.22(9). Adequate procedure is specified. Under *Maquoketa Valley Community School District,* 279 N.W.2d at 512, judicial review is available as to the *formation* of the award. Judicial review concerning *enforcement* of the award also is available under sections 20.-17(5) and 20.22(3).

## IV. The State's Contractual Obligations.

The trial court was correct in resolving the foregoing statutory and constitutional issues in favor of the unions. Whatever strengths could be perceived in the State's position simply cannot be used to frustrate its contractual obligations. In the first place the foregoing provisions do not exist in vacuums. The unions point out that contractual rights also enjoy strong validation in both the federal and our own Constitution. "Freedom of contract is a basic right, protected under the liberty concept of both the Fifth and Fourteenth Amendment due process clauses." 1 Antieau, *Modern Constitutional Law* § 3:22, at 244 (1969) (citing *Prudential Ins. Co. v. Cheek,* 259 U.S. 530, 536, 42 S.Ct. 516, 519–20, 66 L.Ed. 1044, 1051 (1922)).

Indeed the enforceability of contracts, even with respect to the obligations of government, has been established from the earliest days of our republic. In *Perry v. United States,* 294 U.S. 330, 353 n. 3, 55 S.Ct. 432, 436 n. 3, 79 L.Ed. 912, 918 n. 3 (1935), the United States Supreme Court

quoted with approval the following eighteenth century authority:

> [W]hen a government enters into a contract with an individual, it deposes, as to the matter of the contract, its constitutional authority, and exchanges the character of legislator for that of a moral agent, with the same rights and obligations as an individual. Its promises may be justly considered as excepted out of its power to legislate unless in aid of them. It is in theory impossible to reconcile the idea of a promise which obliges, with a power to make a law which can vary the effect of it.

*Id.* (quoting Hamilton: *Communication to the Senate,* January 20, 1795).

If we possessed the power to fashion a different rule for Iowa law, a power we very much doubt we have, we would not do so. It would be no favor to the State to exonerate it from contractual liability. To do so would seriously impair its ability to function. A government must finance its affairs, must contract for buildings, highways, and a myriad of other public improvements and services. It would lead to untenable results if a government, after having contracted for needed things, did not have to pay for them. The rules of economics seem to exact a terrible price from those of uncertain responsibility. The few persons or institutions willing to deal with an exempt state would necessarily factor in the cost of such a tentative chance to collect. This cost to the State would ultimately be borne by the public.

Authorities from other jurisdictions indicate that these principles apply to enforce wage agreements for public employees. *See generally Association of Surrogates v. State of New York,* 940 F.2d 766, 771 (2d Cir.1991); *Association of Surrogates v. State of New York,* 79 N.Y.2d 39, 44–45, 588 N.E.2d 51, 53, 580 N.Y.S.2d 153, 155 (1992); *Carlstrom v. State,* 103 Wash.2d 391, 394–96, 694 P.2d 1, 4 (1985).

## V. The Affirmative Defense.

■ The State points out that an enforceable contract is not the inevitable result of an arbitration decision because sec-

tion 20.22(13) makes a section 20.22(12) award subject to section 20.17(6), which provides:

> No collective bargaining agreement or arbitrators' decision shall be valid or enforceable if its implementation would be inconsistent with any statutory limitation on the employer's funds, spending or budget or would substantially impair or limit the performance of any statutory duty by the public employer.

It is apparent that section 20.17(6) provides an affirmative defense for parties who claim the arbitration decision is not valid or enforceable; the party claiming invalidity necessarily bears the burden of proof. Iowa R.App.P. 14(f)(5).

The State has not carried this burden; the facts render the affirmative defense untenable. In 1974 the State enacted Iowa Code chapter 20, duly passed by the legislature and signed by the governor, expressly making itself bound by its contracts. The State negotiated and became liable under these contracts pursuant to the chapter. After having done all this, the State in effect tells its employees it did so only as an employer but that, as the government of those same employees, it now prefers other options and thus considers itself unbound by the contracts.

All limitations or impairments suggested by the State as qualifying under section 20.17(6) were derived from actions of, or were under the control of, the State. The governor's veto was all that intervened in the appropriation process; the shortage of funds, at least to the extent of liability on these contracts, can be ascribed to discretionary funding choices.

■ The State also urges the effect of Iowa's comparable worth statute, Iowa Code § 79.18, in support of its affirmative defense. If the comparable worth statute were to apply, it would have considerable practical effect on the outcome of the case because of the costs involved. Courts should never be oblivious to the practical effect of their construction of statutes. *Farmers Coop. Elevator v. Union State Bank*, 409 N.W.2d 178, 181 (Iowa 1987) ("When construing a statute, we search for an interpretation that is sensible, workable, practical, and logical."). But this rule of statutory construction cannot be used to justify judicial participation in political or economic decisions our constitution has assigned to the two other branches of state government.

We do not suggest there is merit in the State's comparable worth argument. The language of Iowa Code section 79.37 strongly suggests that administrative implementation of the comparable worth law shall not negate the provisions of a collective bargaining agreement negotiated under chapter 20. Under the circumstances here we think concerns about comparable worth cannot constitute an affirmative defense under section 20.17(6).

It would clearly be inappropriate for us to venture an opinion on whether chapter 20 is wise or unwise. It is appropriate and necessary for us to hold, as we do, the State is liable on its contracts.

## VI. *The Governor's Veto.*

■ We do not hold that the governor's veto was invalid. Our holding is only that the trial court was correct in its determination that the arbitration decisions amounted to binding obligations of the State, a matter that was not adjudicated at the time of the veto. The governor had the power to veto the particular appropriation bill in question. We affirm the trial court finding that the governor did not act in bad faith in exercising it. *See* Iowa Const. art. IV, § 9. But the veto did not serve to erase the underlying obligation of the State. We note and approve the following:

> A clear distinction must be drawn between the right to receive pension benefits and the funding method adopted by the Legislature to assure that monies are available for the payment of such benefits.

*Kosa v. Treasurer of State*, 408 Mich. 356, 371–72, 292 N.W.2d 452, 460 (1980). It was entirely appropriate for the governor to secure a judicial determination of the validity or enforceability of the arbitration decisions before acting to fund the awards.

See Iowa Code § 20.17(6). The veto, then, became effective when not overridden by the legislature. See 1981–82 Op. Iowa Att'y Gen. 63.

The considerations, including political considerations that go into the appropriation process, are left to the legislative branch, with the executive participation we have mentioned. The judicial branch will intercede, under its constitutional authority, in that process only when a failure to act, or a deadlock, has left an *adjudicated* state obligation uncollectible. We trust, owing to the goodwill and respect for the rule of law on the part of the governor and the legislators, such a point will not be reached in this dispute.

VII. *Interest.*

The trial court determined that the wage increases should draw interest and we agree. Interest shall be computed on each underpayment from the date due until paid at the five percent rate specified in Iowa Code section 535.2.

We have not overlooked other contentions disputed by the parties. We have studied them and find them without merit or unnecessary to discuss.

AFFIRMED.