**In re Fred G. CROUCH and Carol Joyce Crouch, dba Crouch Farms, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**VAN VACTOR, FRANCIS & MARTIN; DeKalb Equipment Leasing Corp.; Midstate Electric Co-Op, Inc.; Fred G. Crouch and Carol Joyce Crouch, dba Crouch Farms, Defendants.**

**Bankruptcy No. 383–00310.**
**Adv. No. 84–0529.**

United States Bankruptcy Court,
D. Oregon.

June 7, 1985.

Robert M. Simmons, Portland, Or., Gerald A. Martin, Bend, Or., represented the debtors, Fred G. and Carol J. Crouch.

Edward P. Fitch, Redmond, Or., represented DeKalb Equipment Leasing Corp.

Van Vactor, Francis & Martin, Bend, Or., represented Midstate Elec. Co-op.

## ORDER DISTRIBUTING CROP PROCEEDS

DONAL D. SULLIVAN, Bankruptcy Judge.

The government filed a complaint to determine the disposition of the proceeds of crops harvested during the chapter 11. These proceeds resulted from several cuttings of alfalfa which was a perennial crop seeded by the debtors prior to the filing of chapter 11. The debtors filed chapter 11 on February 1, 1983 and are Christmas Valley farmers who, after approximately two growing seasons, failed to achieve confirmation of a plan of reorganization. The government claims a lien on the proceeds arising from a pre-petition security agreement covering the debtors' land, equipment and crops and rights arising from a cash collateral order entered on December 5, 1983. Various parties who rendered administrative services during the chapter 11 also claim a right to be paid from the existing crop proceeds. The parties objected to dismissal of the chapter 11 until their rights are determined because of uncertainty anticipated from the retroactive effect of dismissal under 11 U.S.C. § 349(b). By agreement, the debtors sold most of the crop and, after payment of some direct harvest and sale costs, turned over the proceeds to the government for disposition pursuant to court order. The remaining portion of the crop is in the process of being sold. Although unclear, it appears that there will not be enough funds to pay all claims to the crop proceeds. The crop proceeds should be distributed as follows.

■ Those claimants, including the government who, after filing, directly contributed to the production of the crops through the use of cash collateral or services should be paid from the crop proceeds under 11 U.S.C. § 506(c) and 11 U.S.C. § 552(b) to the exclusion of general administrative costs or indirect costs and any remaining surplus, which is unlikely, should be retained by the government pursuant to its lien. 11 U.S.C. § 552(a) is inapplicable. The government's security interest under 11 U.S.C. § 552(b) covers all post-filing crops and their proceeds on the theory that a perennial crop, unlike an annual crop planted post-filing, forms a part of the government's collateral because it was in the ground at the time of chapter 11. Alternatively, the government is entitled to a share of the proceeds as adequate protection under the December 5, 1983 cash collateral order to the extent that the debtors disbursed funds after filing, either from crop proceeds in existence at the time of filing or from later harvested crops.

■ The purpose behind the "equities of the case" rule of 11 U.S.C. § 552(b) is, in a proper case, to enable those who contribute to the production of proceeds during chapter 11 to share jointly with pre-petition creditors secured by proceeds. To this extent, the principles governing the taxation of preservation costs under 11 U.S.C. § 506(c) and those rules governing the distribution of proceeds to secured creditors should be the same. To tax preservation costs under either theory, three tests must be satisfied:

(1) Was the expenditure necessary?

(2) Did the expenditure benefit the creditor?

(3) Are the amounts sought reasonable?

*In the Matter of Trim-X, Inc.,* 695 F.2d 296, 299, (7th Cir.1982).

Where crops secure cash collateral, there is, at best, always a gamble that receipts from succeeding crops will not be sufficient to repay both the cash collateral creditor and those who advance some of the costs of planting and preserving successive crops. In recognition of the special application of 11 U.S.C. § 552(b) to a farming situation, the equities of the case rule in fairness requires insufficient receipts to be pro-rated among the cash collateral creditor and those § 506(c) creditors who satisfy the three-part test necessary to establish their claims.

In this case, the Court entered the cash collateral order of December 5, 1983 after notice and opportunity for hearing to the government. The issue of the extent of the adequate protection to be given to the government was reserved to a future hearing. The perennial crop was in the ground and was just as much a part of the government's collateral as the earth itself and, as such, was logically entitled to preservation. The government had an opportunity to show before entry of the cash collateral order that economically it may have been cheaper to allow collateral which should enhance the value of the land to die without the further expenditure from anyone. For this reason, the government is not entitled, under the circumstances, to judge the success of the cash collateral order and the reasonableness or necessity of the preservation costs by the after the fact test of whether the crop succeeded. The code does not grant a cash collateral creditor entitled to adequate protection priority over § 506(c) preservation creditors. Their rights are equal under the circumstances and 11 U.S.C. § 507(b) is of no help.

The above principles should govern the distribution of the crop proceeds now held by the government. The government should, if necessary, obtain an accounting of the use of its cash collateral for the entire administrative period. The government should be allowed to offset against a claimant's total contribution previous payments from its cash collateral to the claimant. Interest should not be allowed to anyone until all post-petition preservation costs and cash collateral expenditures have been satisfied. Under the necessity test, power and irrigation costs should be allowed but attorneys' fees should not be allowed. Any dispute as to the amount of a claim should be governed by the reasonableness test and not necessarily by contract rates.

In the hope that difficult accounting problems and further litigation can be avoided, the claimants to the fund held by the government should attempt to agree on a distribution order for the Court's signature. Failing agreement, the government should apply at the end of 30 days for an order of distribution and, in its application, specify the claims which have been made and any dispute, for further consideration by the Court. Thereafter, the chapter 11 will be dismissed.

IT IS SO ORDERED.