**In the Matter of Tom E. BECK and Betty M. Beck, Debtors.**

**Bankruptcy No. BK85–960.**

United States Bankruptcy Court, D. Nebraska.

Dec. 16, 1985.

Clifford Ruder, Omaha, Neb., for debtor.

Robert V. Ginn, Omaha, Neb., for creditor.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter was heard on oral argument on August 12, 1985. The Court then ordered briefs and this memorandum opinion is based upon the oral argument of counsel and the factual and legal assertions in the briefs. Chapter 13 debtors filed a motion for determination of secured status and post-petition effect of security interest. The alleged collateral is alfalfa plants. Appearing on behalf of the debtor is Clifford Ruder of Stehlik, Smith, Trustin, Schweer & Ruder of Omaha, Nebraska. Appearing on behalf of the secured creditor, Citizens Bank of Bancroft, was Robert V. Ginn of Nelson & Harding, Omaha, Nebraska.

### Facts

Debtors are farmers who filed a Chapter 13 proceeding on April 30, 1985. At the time of the commencement of this case debtors had approximately 120 acres of alfalfa growing.

Debtors entered into a financing agreement with Citizens Bank-Bancroft, Nebraska, on November 15, 1983, and signed the appropriate security agreement and financing statement. The security agreement identifies the collateral as "all farm products including but not limited to ... crops ... both annual and perennial crops and the natural increase and products thereof."

According to the undisputed statement of facts in the brief of the bank, alfalfa is a perennial legume from which three to four cuttings a year are possible in northeastern Nebraska. There may be from five to twenty-five more stems per plant arising from a woody crown, from which new stems grow when the older ones mature or

are cut. When the alfalfa is cut, three to four inches of the plant remain above ground.

The motion of debtors alleges, without dispute by the bank, that the crop will generate proceeds of approximately $2,500 to $3,000 per cutting and that during each season there will be four cuttings. Therefore, proceeds of the crop in the amount of $12,000 will accrue either to the debtors or to the creditors depending upon the validity of the security interest in the cuttings which take place after the first cutting. Debtors agree that the first cutting is covered by the security interest because the crop was planted prior to the filing of the Chapter 13 petition and the first cutting is "the natural increase and product thereof."

However, debtors allege that it defies common sense to claim that the bank has a continuing security interest in the "roots" of the alfalfa plants. They allege that the roots are not the crop and, although it does not take any fertilization or replanting to insure that the second, third and fourth crop growths actually occur, it does take labor and the expenditure of funds for the use of equipment and fuel to cut each succeeding growth. Therefore, the debtors allege that each succeeding growth should be considered as if it is the result of a newly planted "crop". Otherwise they claim that several problems will arise in the future between the bank and the debtors. The first problem is related to the cost of harvest. Debtors allege it is unfair to require them to cut the crop if it all goes to the bank. Secondly, debtors allege that the crop is growing on their land, in which the bank does not have a security interest or lien. If they are required to continue harvesting a crop for the benefit of the bank, they are not able to use their own land for their own purposes. Finally, they are concerned that if the bank actually has a security interest in the alfalfa plants, they might be accused of conversion of collateral if they made the business decision to plow up the plants and reseed a new crop of some other type, such as corn, wheat or beans to enable them to make full use of their land and fund a plan.

In summary, their argument is that the security interest of the bank in the alfalfa crop should not, as a matter of law, continue in post-petition cuttings. Further, they argued that it is inequitable to permit the security interest to continue because of the problems listed above. The debtors' sole statutory authority for their position is § 552(a) and (b), the Bankruptcy Code.

## Issues

A. Does the bank have a continuing security interest in the successive hay cuttings from alfalfa plants that were planted prepetition?

B. Does the debtor have a right to compensation for the reasonable costs of preserving the alfalfa plants and hay crop if the bank does have a security interest?

C. Are the debtors required to continue to maintain the crop in which the bank has a security interest if such maintenance prohibits the debtors from using their own land to produce a crop which can benefit them and provide funds for a plan?

## Conclusions of Law

The bank's security interest does continue in the successive cuttings of the alfalfa/hay crop.

Section 552 of the Bankruptcy Code states:

(a) except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) except as provided in sections ... (not applicable) ..., if the debtor and an entity entered into security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security inter-

est extends to such proceeds, product, offspring, rents, or profits required by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the Court, after notice and a hearing and based on the equities of the case, orders otherwise.

It is clear from § 552(a) that a security interest does not attach to a crop planted after the commencement of the case. *In Re Sheehan*, 38 B.R. 859, 11 B.C.D. 835 (D.S.D. March 30, 1984). Debtors' position is that although the alfalfa plants were in the ground and the security interest covers crops, the successive cuttings post petition should not be considered "the natural increase and products" of the alfalfa plants. Since the alfalfa plants would die without the farmer continuing the cuttings, debtors urge that the act of continuing the cuttings should be considered tantamount to putting in a new crop or new plants and therefore should be considered as property acquired after the commencement of the case. There does not appear to be any cases of record specifically on this point. That may be because the language of the security interest is clear, the language of the Code is clear and it is clear to counsel for most debtors that alfalfa plants are perennials and the successive crops are the natural increase and products of the original plant.

However, in this case debtors urge the Court to create a fictional planting season. This Court refuses to do so. The only case that debtors offer in support of their position is *In Re Lawrence*, 41 B.R. 36 (B.C. Minn.1984), where the secured creditor claimed that milk produced after the case was filed was subject to its security interest. That Court applied § 552(a) to find that technically, the milk was a proceed of the cows in which the creditor had a security interest. However, according to the debtor, the Court used common sense and applied § 552(a) to limit the creditor's claim in the milk proceeds. Several cases concerning milk have been decided since the *Lawrence* case and decided in an opposite manner. See *In Re Potter*, 46 B.R. 536

(B.C.Tenn.1985); *In Re Hollie*, 42 B.R. 111 (B.C.Ga.1984); *In Re Johnson*, 47 B.R. 204 (B.C.Wis.1985).

The language of the security agreement, the Code and the cases is clear. The security interest attaches to the natural increase or products of property of the debtor.

The debtor then argues that the Court should find that it is not equitable to permit the continuing security interest in the successive hay cuttings. The debtor urges that the Court look to the last few phrases of § 552(b) and find that based on the equities of this case the security interest should not continue in the successive hay cuttings. This Court declines to do so. As support for the position that after weighing the equities this Court should find it inequitable to permit the security interest to continue in post-petition hay cuttings, debtors point out that the crop is on their land, the hay cuttings take the expenditure of labor and use of equipment, and they are constantly threatened with allegations of conversion of collateral if they do not maintain the crop and finally that they are prohibited or may be prohibited from changing their crops to yield proceeds which would be of benefit to them, rather than of benefit to the creditor.

None of the problems suggested by the debtors are convincing. If the debtors expend labor and fuel and use of equipment to preserve, protect, harvest and market a crop in which the bank has a security interest, the debtors have a right to compensation. There are procedures under the Bankruptcy Code whereby the debtors can request such compensation if the creditor is unwilling to agree to such compensation. The debtors are not slaves to the creditor. They are not required to work for the creditor's benefit and go uncompensated. However, in the negotiations between the debtors and the bank and at any hearing held on the request for compensation, either before the crop is cut or after the crop is cut, the compensation or expenditure must meet three tests as identified in the

case of *In Re Crouch,* 51 B.R. 331 (Bkrtcy. 1985). The three tests are:

(1) Was the expenditure necessary?

(2) Did the expenditure benefit the creditor?

(3) Are the amounts sought reasonable?

In the *Crouch* case the parties apparently agreed that the secured creditors had a continuing security interest in the alfalfa crop. However, the parties could not agree that those who provided services in harvesting the crop should be paid from the crop proceeds. Even though it was not a specific issue, the Court states at page 332:

"The government's security interest under 11 U.S.C. § 552(b) covers all post-filing crops and their proceeds on the theory that a perennial crop unlike an annual crop planted post filing, forms a part of the government's collateral because it was in the ground at the time of Chapter 11."

The Court applied the "equities of the case" rule of § 552(b) "to enable those who contribute to the production of proceeds during Chapter 11 to share jointly with creditors secured by the proceeds." Page 332. In order to share the proceeds with the creditors, the party providing the service had to meet three tests listed above. Therefore, the concern of the debtors that they will not be paid for their services has been answered.

Finally, the debtors are concerned that they will be required to continue servicing the crop for the benefit of the creditor even though they own the land and could fund a plan more efficiently and effectively if they were permitted to plant different crops. This should be rather simple to handle. If the debtors desire to plant different crops, they may ask permission of the Court, with notice to the creditor, for such authority. They may be required to provide some type of adequate protection to the creditor by granting a lien in a different crop or some other form of adequate protection. However, with appropriate notice and hearing, this Court believes that an appropriate remedy can be fashioned.

In conclusion, the security interest of the bank continues in the post-petition hay cuttings.

Separate order to be filed.