**In re GROVES FARMS, INC., Debtor.**

**No. IP85–4392RA S.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Aug. 19, 1986.

James M. Matthews, Baker and Daniels, Indianapolis, Ind., for Production Credit Ass'n.

Jon Abels, Dann Pecar Newman Talesnick & Kleiman, Indianapolis, Ind., for Lyons Capital Resources.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ON APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE

NICHOLAS W. SUFANA, Bankruptcy Judge.

Lyons Capital Resources, Inc. ("Lyons") filed its Application for Payment of Administrative Expense on June 2, 1986. In its Application, Lyons requested that, if

Groves Farms, Inc. ("Debtor") were unable to pay the administrative expense, secured creditors be surcharged for that expense.

Production Credit Association of the Fourth District ("PCA"), one of the secured creditors, responded with a Motion to Strike on June 18, 1986. The matter came before this Court for hearing on July 29, 1986. Jon Abels appeared for Lyons. James Matthews appeared for PCA. Several other creditors appeared by counsel, and essentially concurred in the arguments made by PCA. Both Lyons and PCA have extensively briefed the issues presented by Lyons' motion and PCA's response thereto. And the Court, having reviewed the file and considered the arguments of counsel, now enters the following findings of fact:

*Findings of Fact*

1. Pursuant to an order of this Court dated April 22, 1986, Lyons has an administrative claim against the Debtor for $8000. That claim arises from the Debtor's use of farm equipment leased from Lyons. The Debtor used that equipment to harvest its 1985 crop and then rejected the lease and returned the equipment to Lyons.

2. As of the date of the hearing, the Debtor did not have sufficient funds on hand to pay Lyons' claim. The Debtor has ceased its reorganization efforts and is liquidating all its assets. It is not known whether the estate resulting from such liquidation will be sufficient to pay administrative claims.

3. PCA is one of several creditors which has a perfected security interest in the 1985 crops harvested by the Debtor. Shortly after the Chapter 11 proceeding was filed, PCA and the Debtor entered a cash collateral agreement whereby PCA agreed to allow the Debtor to use $25 per acre from the proceeds of the 1985 crop to pay the expenses of harvesting that crop. Lyons had notice of this agreement, and did not object. Lyons did not receive any of the funds released by PCA to pay the costs of harvest.

Whereupon, the Court now makes the following conclusions of law:

*Conclusions of Law*

1. This Court has jurisdiction over the parties to this contested matter. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the General Order of Referral from the United States District Court for the Southern District of Indiana dated July 11, 1984. This contested matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Lyons has brought its application pursuant to 11 U.S.C. § 506(c), which provides that "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

 3. Lyons lacks standing to invoke Section 506(c). That section can only be invoked by a trustee, or by a debtor-in-possession who has the powers of a trustee pursuant to Section 1107. *In re Fabian*, 46 B.R. 139 (Bankr.E.D.Pa.1985); *In re Proto-Specialties, Inc.*, 43 B.R. 81 (Bankr. D.Ariz.1984).

 4. Nor will this Court invoke the equitable powers given to it by Section 105 of the Code to allow Lyons to use Section 506(c) for its own benefit. The Court is aware that other courts have allowed entities other than the trustee or the debtor-in-possession to use Code powers technically only given to the trustee or debtor-in-possession. See, for example, *In re Parrot Packing Co.*, 42 B.R. 323 (N.D.Ind.1983), where the Court empowered the unsecured creditors committee to reject a union contract which the debtor-in-possession refused to reject. Also see *Matter of Monsour Medical Center*, 5 B.R. 715 (Bankr.W. D.Pa.1980), where the court authorized the unsecured creditors committee to pursue a preference action which the debtor-in-possession refused to assert. In all of those situations known to this Court where the express language of the Code has been ignored to allow some non-trustee or non-debtor to assert a right, the actions of that

non-trustee or non-debtor were aimed at benefitting the estate and all creditors. Here, Lyons wishes to use Section 506(c) for its own benefit.

■ 5. Lyons also cites 11 U.S.C. § 510(c), and requests that this Court equitably subordinate PCA's secured claim to the administrative claim of Lyons. PCA simply has not engaged in any fraud or overreaching which would constitute inequitable conduct and warrant subordination of PCA's secured claim. *Matter of W.T. Grant Co.*, 4 B.R. 53 (Bankr.S.D.N.Y.1980). PCA notified all creditors that the crops would be harvested, and that a certain portion of the proceeds would be used to pay the expenses of the harvest. Lyons did not object to PCA's actions until it became apparent that the Debtor lacks the funds to pay Lyons' claim.

■ 6. Finally, Lyons cites Section 552(b) of the Code which provides for the continued post-petition viability of pre-petition security interests in proceeds, product, offspring, rents or profits, but allows the Court to override those security interests when equitable. This "equity exception" has recently been explained by the Seventh Circuit in *J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985). The Court stated:

> The equity exception is meant for the case where the trustee or debtor-in-possession uses other assets of the bankruptcy estate (assets that would otherwise go to the general creditors) to increase the value of the collateral.

> 779 F.2d at 1246.

7. This explanation was applied in a case with facts quite similar to those here. The debtors in *In re Lindsey*, 59 B.R. 168 (Bankr.C.D.Ill.1986) filed motions for apportionment seeking to charge the Farmers Home Administration ("FmHA") for expenses incurred in harvesting and hauling the winter wheat which secured the FmHA obligation. The court said that the harvest expenses were administrative expenses which could only be charged to Farmers Home Administration pursuant to Section 506(c) since the debtors had not incorporat-

ed assets which would otherwise go to the general creditors into the wheat crop so as to increase its value. The court then went on to evaluate the expenses pursuant to Section 506(c) and allowed the debtors to surcharge FmHA.

8. Here, the use of the equipment leased from Lyons was not an asset which would otherwise have gone to general creditors had the Debtor not harvested the crops. The general unsecured creditors had no rights to the use of that equipment. Therefore, Lyons cannot use the equity exception of Section 552(b) to obtain payment of its administrative expense from PCA. And, as discussed above, Lyons lacks standing to invoke Section 506(c), unlike the debtors in the *Lindsey* case.

9. This interpretation of the Section 552(b) equity exception conforms to other cases decided pursuant to that exception. That exception requires the court to balance "the expenditures of time, labor, and funds relating to the collateral, the relative position of the secured party, and the overall rehabilitative theme of bankruptcy law." *In re Lawrence*, 41 B.R. 36 (Bankr. D.Minn.1984); *In re Vanas*, 50 B.R. 988 (Bankr.E.D.Mich.1985). With rare exception, the courts have modified security interests only when modification would assist the debtor's reorganization efforts. *In re Delbridge*, 61 B.R. 484 (Bankr.E.D.Mich. 1986); *In re Serbus*, 48 B.R. 5 (Bankr.D. Minn.1984). Further, the courts have been more inclined to assist the debtor through the Section 552(b) equity exception where the creditor whose interest will be modified is oversecured. *In re Serbus*, above. *In re Lawrence*, above. *Smith v. Dairymen, Inc.*, 790 F.2d 1107 (4th Cir.1986).

10. This Court has only found one well-reasoned case where a creditor successfully invoked the Section 552(b) equity exception for its own benefit. *In re Trans-Texas Petroleum Corp.*, 33 B.R. 67 (Bankr.N.D. Texas 1983). There, the court used the section to extend the creditor's security interest to post-petition proceeds of accounts receivable where commingling of the proceeds with other assets rendered the

security interest ineffective under state law, since the commingling was minor.

11. *In re Crouch,* 51 B.R. 331 (Bankr.D. Ore.1985), cited by Lyons, is improperly reasoned, since that case suggests that Section 506(c) and the Section 552(b) equity exception require the same analysis. The *Crouch* court also failed to note that only a trustee or debtor-in-possession can use Section 506(c). The Section 552(b) equity exception and Section 506(c) are unique sections and serve separate purposes. Lyons is unable to qualify its administrative claim for treatment under either of those sections.

### Order

Based upon the foregoing, it is OR-DERED, ADJUDGED, AND DECREED that Lyons' Application for Payment of Administrative Expense is. DENIED insofar as such Application seeks to surcharge secured creditors for that expense. Lyons is of course still entitled to payment as an administrative expense from the estate.