In re AIRPORT INN ASSOCIATES, LTD., a Colorado limited partnership, d/b/a Clarion San Francisco Airport Hotel, Debtor.

AIRPORT INN ASSOCIATES, LTD., a Colorado limited partnership, d/b/a Clarion San Francisco Airport Hotel, Plaintiff,

v.

TRAVELERS INSURANCE COMPANY, Defendant.

Bankruptcy No. 89 B 09079 E.
Adv. No. 89 A 0820.

United States Bankruptcy Court,
D. Colorado.

Nov. 2, 1990.

Order on Extent of Defendant's Secured Status Nov. 19, 1990.

Lee M. Kutner and Daniel W. Pinkston, Rubner & Kutner, P.C., Denver, Colo., for plaintiff.

Garry R. Appel and Elizabeth E. Brown, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendant.

## RULING RE: DETERMINATION OF NATURE AND EXTENT OF LIENS HELD BY TRAVELERS INSURANCE COMPANY

MICHAEL J. MELLOY, Chief Judge, sitting by designation.

This matter is before the Court on the complaint of plaintiff, Airport Inn Associates, Ltd., to determine the nature and extent of the liens held by defendant, Travelers Insurance Company. The parties entered into a stipulation of facts and exhibits, and submitted the matter to this Court on briefs and oral argument. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact, conclusions of law and order pursuant to F.R.Bankr.P. 7052.

### FACTS

The parties have stipulated to the following undisputed facts. Plaintiff/Debtor,

Airport Inns Associates ("AIA"), owns the Clarion San Francisco Hotel ("Hotel"). The Hotel is located in Millbrae, California. AIRCOA Hospitality Services, Inc. manages the Hotel. The Hotel generates income from leases, overnight guests, food and beverage services, convention services, and meeting and banquet facilities. The Hotel also derives revenue from various other sources including telephone sales, commissions, interest income, cash discounts earned, revenues from guests that do not show, guest laundry and valet services, and in-room movies. The price of a room includes a variety of normal hotel amenities and services.

On or about December 21, 1985, AIA executed a Promissory Note in the amount of $28,500,000 payable to Defendant, Travelers Insurance Company ("Travelers"). On the same day, AIA and Travelers executed a Deed of Trust and Assignment of Rents ("Deed of Trust") to secure the Note. The Deed of Trust grants Travelers a first mortgage lien on the real property which includes the Hotel and liens against additional real property interests owned by AIA. An assignment of leases, also executed on December 21, 1985, further secures the Note.

AIA also executed a security agreement to secure the Note. The security agreement grants Travelers a lien in virtually all of AIA's personal property, including accounts receivable and proceeds of accounts receivable. On December 26, 1985, Travelers perfected its personal property lien by filing financing statements, signed by AIA, with the California Secretary of State. On or about April 26, 1988, AIA and Travelers entered into an agreement to modify their security arrangement. The necessary subordinate lienholders approved the modification agreement.

On July 5, 1989, AIA filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On the petition date, AIA held $105,569.08 in cash on hand derived from revenues the Hotel generated. Ten days prior to the filing date AIA had $132,827.49 in cash on hand and in bank accounts. In the ten day period prior to AIA's petition date, AIA collected proceeds from accounts and accounts receivable in the amount of $286,882.91. In the same period, AIA paid $287,247.48 in expenses for the Hotel operation. All cash on hand and held in deposit accounts at the time AIA filed for bankruptcy was derived solely from the revenues of the Hotel.

At the time AIA filed the bankruptcy petition, it had $410,255.38 in uncollected accounts receivable. AIA received payment on $409,368.16 of these accounts receivable after filing the bankruptcy. Additionally, AIA has received $450 per month in rent revenues from a lease of Hotel property for a gift shop.

AIA owes Travelers more than $32,000,-000. While the parties presently dispute the value of the Hotel property, they agree that its value is less than $25,000,000. Hence, Travelers is not an over-secured creditor, and, in fact, will have a substantial unsecured deficiency claim.

On July 17, 1989, AIA filed this adversary proceeding to determine the nature, extent, validity, and priority of Travelers' liens. On January 22, 1990, the parties filed a joint pre-trial statement which included the stipulation of uncontested facts referred to above. The parties supplemented their joint pre-trial statement on September 4, 1990. The parties agreed to forego trial and rely on the stipulations, briefs, and oral arguments. The Court held oral arguments on September 13, 1990, and took the matter under advisement.

## DISCUSSION AND CONCLUSIONS OF LAW

Essentially, Travelers has a lien on all revenues the Hotel generates. Room revenues are by far the most sizable portion of those revenues. AIA. filed this adversary complaint to determine whether Travelers' lien in the revenues is perfected and, if so, the extent of that lien in those revenues. AIA argues that the revenues are best characterized as personal property interests which are governed by the California's version of the Uniform Commercial Code ("UCC"). AIA contends that under the operation of the Bankruptcy Code and Cali-

fornia's version of the UCC, Travelers' lien is substantially diminished, if not altogether negated. Travelers responds by claiming that room revenues should be treated as rents and dealt with under real property law. Travelers goes on to argue that even if those revenues are personal property governed by the California Commercial Code, Travelers remains fully perfected in the cash on hand on the date of filing and the accounts receivable on hand on the date of filing that were collected post-petition.

## A.

### Hotel Revenues as Rentals or Personal Property

■ The threshold issue in this proceeding is what law will determine the extent of Travelers' security interest in the Hotel revenues. Of particular significance here is whether under California law hotel room revenues constitute personal property which is subject to the California UCC, or constitute rentals, subject to California real property laws. AIA argues that applicable precedent demonstrates that the hotel room revenues more properly are considered personal property subject to the California version of the UCC. Travelers responds that the revenues are best characterized as real property interests under California law.

A recent decision from this district decided what appears to be the identical issue. *In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr.D.Colo.1990). In *Sacramento Mansion*, Judge Conrad[1] dealt with the question of how to characterize revenues from hotel room sales under California law. After a thorough analysis of applicable precedents, Judge Conrad held that "hotel room revenue is not 'rent' from a 'lease' but rather income from a mere license ..." *Sacramento Mansion*, 117 B.R. at 607. Judge Conrad went on to conclude that "nonresidential hotel room revenue from transient guests is personal property [and] [t]hus, the perfection of a security interest in hotel room revenue is governed by Article 9 of California's UCC." Id. at 607.

The *Sacramento Mansion* decision is in accord with the weight of authority. The only other court to deal with this issue under California law also reached the same conclusion. *In re Ashkenazy Enterprises*, 94 B.R. 645 (Bankr.C.D.Cal.1986). Two cases recently decided in this jurisdiction reached the same result applying the law of other states. *In re Vickers*, 111 B.R. 332, 337 (D.Colo.1990) (Judge Kane found that motel room revenues were personal property under Colorado law); *In re Investment Hotel Properties, Ltd.*, 109 B.R. 990, 994 (Bankr.D.Colo.1990) (Judge Clarke determined that hotel room revenues were personalty under Missouri law). While Travelers made some uncompelling attempt to distinguish *Ashkenazy*, it made no attempt to distinguish *Sacramento Mansion* or other precedent in this jurisdiction. Based on the foregoing, this Court adopts the exhaustive and well-reasoned analysis of *Sacramento Mansion*, and concludes that under California law, revenues derived from hotel rooms are personal property and liens in these revenues are subject to the California Commercial Code.

## B.

### The Extent of Travelers' Security Interest in Hotel Revenues

The focus of AIA's complaint is to have the Court determine the extent and nature of Travelers' liens in Hotel revenue. The revenues in question are the payments on accounts receivable representing room revenues that AIA collected pre-petition, the payments on pre-petition accounts receivable representing Hotel revenues AIA received post-petition, and the revenues generated post-petition which consist of the rent from the Hotel gift shop and accounts receivable generated by the on-going Hotel operation.

Payments on accounts receivable are an important part of the revenues before this Court. In *Investment Hotel Properties* Judge Clarke observed that payments on accounts receivable constitute proceeds of those accounts receivable. *In re Invest-*

---

1. Judge Conrad was sitting by special designa- tion.

*ment Hotel Properties, Ltd.*, 109 B.R. 990, 995 (Bankr.D.Colo.1990). One of AIA's primary objectives in this case has been to convince the Court that Travelers' lien on these proceeds is extremely limited. Since room revenues are personalty in the form of accounts receivable governed by the California Commercial Code, the proceeds of those accounts also are governed by the California Commercial Code. Section 9306 of the California Commercial Code (UCC 9–306) is the applicable section dealing with the perfection of a security interest in proceeds.

■ "Like many issues in bankruptcy law, property rights under § 9–306 are determined at the inception of the insolvency proceedings." *In re Hugo*, 58 B.R. 903, 907 (Bankr.E.D.Mich.1986). On the date the bankruptcy petition was filed, AIA held both accounts receivable representing the room revenues and cash on hand representing the proceeds of these accounts. Travelers claims a fully perfected security interest in all of these amounts. AIA contends that the applicable provisions of the California Commercial Code and the Bankruptcy Code work together to limit, if not altogether negate, the scope of Travelers' security interest in these accounts and proceeds.

AIA received these accounts receivable proceeds both pre-petition and post-petition. The law treats these proceeds differently based on whether they were received pre-petition or after filing. *See In re Bumper Sales*, 907 F.2d 1430, 1438 (4th Cir.1990); *In re Hugo*, 58 B.R. at 907. Hence, this Court will determine separately the extent of Travelers' security interest in these pre-petition and post-petition proceeds.

## I. *Hotel Revenues Generated and Collected Pre=Petition*

■ The joint pre-trial statement indicates that on the date AIA filed for Chapter 11 bankruptcy, AIA held proceeds already collected from the accounts receivable. In the 10 day period prior to the bankruptcy filing, AIA collected $286,882.91 from accounts receivable. During that same period, AIA paid out $287,247.48

in operating expenses for the Hotel. According to the pre-trial statement, at the date of petition AIA held $105,569.08 of cash on hand. AIA asks this Court to determine the extent of Travelers' security interest in these proceeds.

The parties agree that California UCC § 9306(4) governs the extent of Travelers' lien in these pre-petition proceeds. Section 9306(4) deals with the extent of a creditor's security interest in proceeds in an insolvency proceeding. The section states:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in all of the following proceeds:

(a) In identifiable noncash proceeds and in a separate deposit account containing only proceeds.

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings.

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings.

(d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is both:

(i) Subject to any right of setoff.

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a), (b), and (c).

Calif.Com.Code § 9306(4). This section is the California version of section 9–306(4) of the UCC. In general UCC § 9–306(4) "divides 'proceeds' into two categories, 'identifiable' and 'commingled,' i.e., non-identifia-

ble proceeds, and alters the reach of a perfected security interest, depending upon whether the proceeds are identifiable or non-identifiable." *In re Gibson Products of Arizona,* 543 F.2d 652, 656 (9th Cir. 1976). Paragraphs 4(a) through (c) generally pertain to identifiable proceeds, and paragraph (d) deals with non-identifiable proceeds. *Id.* Paragraphs (a) through (c) divide the identifiable proceeds into specific subcategories in which the creditor's security interest remains undisturbed when bankruptcy is filed. *See Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1300 (10th Cir.1986). Under paragraph (d), however, the creditor's security interest in proceeds not within 4(a) through (c) is limited to "an amount of the debtor's cash and deposit accounts not greater than the cash proceeds received within ten days before the insolvency proceedings." *Maxl Sales,* 796 F.2d at 1300.

The law is clear that the extent of a creditor's security interest under UCC § 9–306 depends on the characterization of the proceeds in question. For example, under California UCC § 9306(4)(b) Travelers would retain a security interest in the full amount of cash on hand, $105,569.08, if that cash is cash proceeds in the form of money which is not commingled or deposited prior to bankruptcy. If these funds were commingled or deposited, then Travelers' rights are found under § 9306(4)(d). The pre-trial stipulation states only that this was cash on hand and does not indicate whether these funds were commingled or held in deposit. Given this lack of information the Court cannot apply § 9306(4)(b).

This gap in information is irrelevant, however, because even if this Court assumes that the funds were commingled or deposited, Travelers still is entitled to the $105,569.08 in cash on hand under § 9306(4)(d). Section 9306(4)(d) limits the creditor's security interest in proceeds to the amount of cash proceeds collected in the 10 day period prior to bankruptcy. *Maxl Sales,* 796 F.2d at 1300. The stipulation states that AIA collected $286,882.91 of accounts receivable in the 10 day period prior to the bankruptcy. Travelers would be entitled to that $286,882.91 of proceeds,

however, only $105,569.08 remained on hand on the date of filing. The stipulation indicates that AIA spent the remaining portion of the funds paying operating expenses of the Hotel. Under § 9306(4)(d) of the California Commercial Code, Travelers is entitled to a perfected security interest in the cash on hand on date of filing.

## II. *Pre–Petition Accounts Receivable Collected Post–Petition*

The security agreement between Travelers and AIA provides Travelers with a security interest in all accounts receivable and proceeds of accounts receivable. On the date AIA filed for bankruptcy, AIA held $410,255.38 in accounts receivable. AIA received $409,368.16 in payments on those accounts receivable after the filing. AIA placed these cash proceeds in its general operating account with the other funds it held.

AIA contends that § 552 of the Bankruptcy Code and § 9306(4) of the California Commercial Code limit the scope of Travelers' security interest in these funds. AIA believes that 11 U.S.C. § 552(a) cuts-off Travelers' security interest in the payments received on these post-petition accounts receivable and all future accounts receivable. Bankruptcy Code § 552(a) provides in pertinent part that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a) (1988). AIA believes that the payments on the accounts receivable constitute after-acquired property subject to the § 552(a) cut-off.

Section 552(a), however, is limited expressly by the terms of § 522(b). That section provides:

> ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such

property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (1988). Hence, § 552(b) will allow Travelers to maintain a security interest in proceeds of its original collateral to the extent that the security agreement between the parties and non-bankruptcy law allow the security interest in the proceeds.

■ The stipulation notes that AIA held a security interest in accounts receivable and the proceeds of those accounts. In order to fall under the ambit of § 552(b) the payments AIA received on the accounts receivable must qualify as proceeds of the accounts receivable. As noted previously, Judge Clarke concluded in a recent case that "payment on an account receivable is *proceeds* of the account receivable for purposes of § 552(b)." *Investment Hotel Properties*, 109 B.R. at 995. Thus, Travelers has a perfected security interest in these proceeds of the accounts receivable under § 552(b) to the extent allowed by non-bankruptcy law.

■ AIA argues that the applicable non-bankruptcy law here is California Commercial Code § 9306(4)(d) since the payments received on the accounts receivable constituted cash proceeds that were commingled into AIA's deposit accounts. AIA received these payments post-petition and, therefore, all commingling occurred post-petition as well. AIA contends that under § 9306(4)(d) Travelers' security interest in any proceeds collected pre-petition or post-petition can only equal the amount of cash proceeds AIA collected in the 10 day period prior to bankruptcy, less the amounts paid out for Hotel operation expenses. Hence, AIA argues that since the proceeds collected post-petition were commingled the Court, under § 9306(4)(d), should limit Travelers' security interest in all proceeds

to the $105,569.08 of proceeds on hand at the date AIA file the petition.

AIA's argument is without merit. As a recent Fourth Circuit case notes, there is "ample and well-reasoned precedent holding that Section 9–306(4) 'governs the extent of a creditor's interest in commingled proceeds only up to and including the instant of commencement of the insolvency proceedings.'" *In re Bumper Sales*, 907 F.2d 1430, 1438 (4th Cir.1990) (quoting *In re Hugo*, 58 B.R. at 907); *see also In re Air Florida Systems, Inc.*, 49 B.R. 321, 324 (Bankr.S.D.Fla.1985); *In re SMS, Inc.*, 15 B.R. 496, 500 (Bankr.D.Kan.1981). The *Bumper Sales* court went on to note that "Section 9306(4) 'specifically deals with the cases in which funds are commingled prior to filing bankruptcy ... and not to cases in which funds are commingled after filing.'" *Bumper Sales*, 907 F.2d at 1438 (quoting *In re Turner*, 13 B.R. 15, 22 n. 1 (Bankr. D.Neb.1981)). Hence, in cases like the one before this Court where a creditor asserts a claim under § 552(b) to proceeds that a debtor receives post-petition, "Section 9–306(4) is per se inapplicable." *Bumper Sales*, 907 F.2d at 1438. (citations omitted). The *Bumper Sales* court recognized that allowing § 9–306(4) to effect proceeds received post-petition " 'would have a chaotic effect upon existing liens on property of the type customarily taken by lenders to operating businesses,' because any proceeds of pre-petition collateral received after the filing would not be covered by a pre-petition security agreement." *Bumper Sales*, 907 F.2d at 1438 (citing *In re Aerosmith Denton Corp.*, 36 B.R. 116, 118 (Bankr.N.D.Tex.1983)). Hence, this Court will follow *Bumper Sales* in declining to apply § 9–306(4).

In *Bumper Sales* the court went on to hold that courts should apply UCC § 9–306(3) in deciding cases where a "security agreement extends to post-petition proceeds of pre-petition collateral." *Bumper Sales*, 907 F.2d at 1438; *see also In re Hugo*, 58 B.R. at 907–08. California's version of UCC § 9–306(3) provides:

(3) The security interest in proceeds is a continuously perfected security interest

if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless any of the following apply:

(a) A filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds.

(b) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds.

(c) The security interest in the proceeds is perfected before the expiration of the 10–day period.

Calif.Com.Code § 9306(3). This Court will follow *Bumper Sales* and apply this section to the matter before the Court because the original collateral, the accounts receivable, was reduced to cash proceeds postpetition. In order for Travelers' interest to continue to be perfected, Travelers must satisfy § 9306(3)(b).[2] Travelers already has filed a financing statement covering the accounts receivable, so Travelers must demonstrate only that the proceeds are "identifiable cash proceeds."

Under California Commercial Code § 9306(1), money, checks, deposit accounts, and the like, are cash proceeds. The collection of payments on accounts receivable here constituted money that AIA placed into deposit accounts. Hence, the payments AIA received on the accounts receivable qualify as cash proceeds. The term "identifiable," however, is not defined in the Uniform Commercial Code. *In re John Deskins Pic Pac, Inc.*, 59 B.R. 809, 813

(Bankr.W.D.Va.1986). The California Commercial Code, likewise, is silent on the meaning of "identifiable." Yet, it is well-settled that:

> [w]here a secured party's proceeds are commingled in a general bank account, the secured party has successfully identified the proceeds by tracing them into the account or accounts into which the deposit was made. At that point, a presumption arises that general payments are first made from general funds and that the security interest is only eroded as the balance in the account drops below the amount of proceeds deposited. The presumption is analogous to that which arises when a trustee commingles trust funds.

*In re Turner*, 13 B.R. 15, 22 (Bankr.D.Neb. 1981) (citing *Brown & Williamson Tobacco Corp. v. First National Bank*, 504 F.2d 998, 1002–04 (7th Cir.1974)) and *Universal C.I.T. Credit Corp. v. Farmers Bank of Portageville*, 358 F.Supp. 317, 323–24 (E.D.Mo.1973) (other citations omitted).

■ Applying this standard of identifiability to the case before this Court, there is little dispute that Travelers has traced the proceeds into AIA's deposit account. Travelers' security interest in proceeds remains fully perfected if the amount of funds in AIA's deposit account has been continuously at a level above the amount of proceeds on deposit. Under the factual stipulations of the parties, however, this Court is unable to draw any further conclusions about the identifiability of the proceeds. The stipulation currently contains no reference to the varying post-petition levels of the deposit account, and the correlating times at which AIA deposited proceeds into the account.[3] Hence, this Court cannot determine if at any point in time the account balanced dipped below the amount of proceeds on deposit at that time. An additional evidentiary hearing is necessary to deter-

---

2. Section 9306(3)(a) is inapplicable because the proceeds in question are money, and the only way to perfect a security interest in money is by possession. Calif.Com.Code § 9304(1). Travelers did not take possession. Section 9306(3)(c) likewise is inapplicable because there is no evidence or allegation that Travelers ever attempted to perfect in the ten (10) day period.

3. Counsel for Travelers did represent to the Court that the deposit account never has dipped below the proceeds level. However, in a proceeding based on a stipulated record, this representation alone will not suffice.

mine the extent of Travelers' security interest in the accounts receivable generated pre-petition and collected post-petition.

AIA also has argued that if the Court should award Travelers any of the pre-petition accounts receivable collected post-petition, that the Court should reduce the award, whatever the value, by the $270,000 of unsecured trade debt. AIA contends that the trade debt should be netted from the award since the trade debt helped to generate the accounts receivable, Travelers' collateral. This Court, however, finds no authority for such a "netting" procedure under UCC § 9–306. The only possible source of authority for "netting" in this situation would be the equity exception of Bankruptcy Code § 552(b).

■ The equity exception of § 552(b) provides that a party's lien in proceeds survives § 552(a) "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." What constitutes the equities of a particular case is left to the discretion of the bankruptcy judge. *See J. Catton Farms v. First National Bank of Chicago*, 779 F.2d 1242, 1247 (7th Cir.1985). The analysis focusses on the particular facts of each individual case. *In re Wiegmann*, 95 B.R. 90, 94 (Bankr.S.D.Ill.1989).

■ "The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the estate (which would normally go to general creditors) to cause the appreciated value." *Delbridge v. Production Credit Association and Federal Land Bank*, 104 B.R. 824, 826 (E.D.Mich. 1989) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 91, *reprinted in* 1978 *U.S.Code Cong. & Admin.News* 5787, 5877); *See also Wiegmann*, 95 B.R. at 93; *J. Catton Farms*, 779 F.2d at 1246. In determining whether the exception applies courts look to the amount of time and funds expended on the collateral, the position of the secured party, and the rehabilitative nature of the bankruptcy. *Wiegmann*, 95 B.R. at 93 (citing *In re Groves Farms, Inc.*, 64 B.R. 276, 278 (Bankr.S.D.Ind.1986)). However, courts are more likely to apply the exception where the secured party is over-secured. *Wiegmann*, 95 B.R. at 93–94 (citing *Groves Farms*, 64 B.R. at 278).

■ The facts before this Court do not fit under this exception. The funds AIA used to generate these pre-petition accounts receivable here were expended pre-petition. Hence, the funds were not expended by the trustee or the debtor in possession from the assets of the bankruptcy estate. Further, AIA did not demonstrate that the funds were used to increase the value of Travelers' collateral to the detriment of the unsecured creditors. Moreover, the stipulation makes clear that Travelers is not an over-secured creditor. Travelers likely will have a substantial unsecured claim. The practical effect of AIA's "netting" request is to subordinate Travelers' security interest in the proceeds of the accounts receivable to the unsecured creditor's claims for repayment. There is no equity in that result and it is contrary to the policies provided in the Code. Hence, AIA's request that the Court net the $270,000 in trade debt against Travelers' interest in the accounts receivable proceeds is denied.

### III. *The Effect of § 552 on Hotel Revenues Generated Post–Petition*

The Hotel has continued to generate revenue since AIA filed for bankruptcy. The parties have requested the Court to determine the nature of Travelers' lien, if any, in two sources of post-petition revenue. These revenues are the payments AIA receives from the lease of Hotel space to a gift shop and the accounts receivable that the Hotel operation continues to generate. Travelers continues to claim a perfected security interest in both of these sources of post-petition revenue.

#### a. Gift Shop Rentals

■ AIA has received $450 per month in post-petition rent from the lease of the Hotel's gift shop. At the time of the hearing AIA had received approximately $6500

from the gift shop lease. To fall under § 552(b) a creditor must have an interest in debtors pre-petition property and the rents or proceeds thereof which continue to be recognized under non-bankruptcy law. Under the Deed of Trust, Travelers holds a security interest in the Hotel, pre-petition property, and the rental income the Hotel generates. Travelers' lien, therefore, remains on the rental revenues to the extent allowed by the applicable non-bankruptcy law.

■ There is no dispute that the rental income security interest is governed by California real property laws. Under the real property laws in California, courts enforce rental agreements in accordance with the intent of the parties. *In re Ventura–Louise Properties*, 490 F.2d 1141, 1144 (9th Cir.1974) (citing *Kinnison v. Guaranty Liquidating Corp.*, 18 Cal.2d 256, 261, 115 P.2d 450, 455 (1941). The Deed of Trust expresses an intent that Travelers be entitled to rental income the Hotel generates as security for its loan. This Court concludes then that Travelers' lien on the post-petition rental income is fully recognized under California law. Therefore, the lien survives § 552(a) and Travelers continues to hold a fully perfected security interest in those funds.

### b. Post–Petition Room Revenues

■ The Hotel also continues to generate post-petition room revenues. Although the parties have not provided any figures as to the amount of revenues the Hotel has generated since the bankruptcy was filed, this Court has been asked to assess the nature of Travelers' lien in these revenues. Courts interpreting California law consider revenues generated from room sales to be accounts receivable. *In re Sacramento Mansion*, 117 B.R. 592, 605–07 (Bankr. D.Colo.1990); *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645, 647 (Bankr.C.D.Cal. 1986).

The Court's inquiry is limited to those post-petition accounts receivable generated by the use of AIA's property. Travelers has not contended any of the personal or real property which secures Travelers' debt

has been sold so as to generate post-petition accounts receivable from the actual sale of property. The Court must address whether the use of the property and the resulting rental of rooms which generates accounts receivable are cut-off by § 552(a). The Court concludes that as a matter of law Travelers has no lien in the accounts receivable generated post-petition.

This question has been addressed and answered in this jurisdiction in the case of *In re Investment Hotel Properties, Ltd.*, 109 B.R. 990 (Bankr.D.Colo.1990). The court there concluded that a "security interest in post-petition accounts receivable is invalidated under § 552(a), except to the extent provided in subsection (b)." 109 B.R. at 995. The court in *Investment Hotel Properties* went on to conclude that § 552(b) did not grant to a hotel lender a lien in post-petition accounts receivable. This decision is in accord with the decisions of other courts which have addressed continuing liens in post-petition accounts receivable. *See In re Northeast Chick Services, Inc.*, 43 B.R. 326, 331 (Bankr.D.Mass. 1984); *In re Photo Promotion Associates, Inc.*, 53 B.R. 759, 763 (Bankr. S.D.N.Y.1985).

Travelers cites no authorities in its brief for its proposition that accounts receivable generated by the use of its secured property are covered by its liens under § 552(b). Such a reading of § 552(b) would conflict with the provisions of § 363 which allow a debtor to use secured property in the ordinary course of business. If a creditor wishes to obtain adequate protection for the use of the secured property, such adequate protection must be sought and ordered by the Court. The Court could order a lien in post-petition accounts receivable as adequate protection if that relief was requested, however, no such protection has been ordered in this case. If Travelers were given a lien in all post-petition accounts receivable it would be, in essence, obtaining adequate protection without appropriate notice to other creditors, opportunity for hearing, or order from this Court. *See In re Northeast Chick Services, Inc.*, 43 B.R. 326, 331 (Bankr.D.Mass.1984)

("[a]bsent evidence of a Court order granting the Bank a replacement lien on post-petition accounts receivable, the Bank is unable to sustain its claim that it has a security interest in the debtor's post-petition accounts receivable.").

## CONCLUSION

In conclusion and by way of summary, the Court finds that Travelers has lien rights as follows.

1. Travelers has a lien in the $105,569.08 of cash on hand as of the date of the filing of AIA's petition. Travelers' allowed secured claim shall include this amount.

2. Travelers has an allowed secured claim in the $409,368.16 of accounts receivable which existed on date of filing and which were collected post-petition to the extent Travelers can meet the tracing requirements of Calif.Com.Code § 9306(3).

The Court will schedule a telephonic hearing with the counsel for Travelers and AIA in order to discuss how the issue of the tracing requirement may be resolved. The Court will discuss whether the parties can stipulate as to the factual basis of resolution of this dispute so that a final order can be entered in this case. In the event a stipulation cannot be entered into, such further evidentiary hearings as may be required will be discussed with counsel at the telephonic hearing.

3. Travelers has a lien in the $450 per month in post-petition rent received from the lease of the Hotel gift shop. Travelers' allowed secured claim shall be increased by the amount of those rentals collected between the date of filing and the date of the entry of an order of confirmation of any plan which ultimately may be confirmed by AIA.

4. Travelers has no lien rights in any accounts receivable generated post-petition.

## ORDER

IT IS THEREFORE ORDERED that the allowed secured claim of Travelers Insurance Company shall be increased by the $105,569.08 of cash on hand as of the date of filing.

IT IS FURTHER ORDERED that Travelers' allowed secured claim shall be increased by the amount of the gift shop rentals received between the date of filing and the date of the confirmation of AIA's plan.

IT IS FURTHER ORDERED that the Court will hold a telephonic hearing with the counsel for Travelers Insurance Company and the debtor on:

### NOVEMBER 13, 1990 at 10:30 A.M.

At the telephonic hearing, the Court will take up the issue of how the disputes relating to the tracing requirements of Calif.Com.Code § 9306(3) will be resolved. Upon the resolution of that dispute, the Court will enter a supplemental order concerning the lien rights of Travelers in the pre-petition accounts receivable collected after the date of the filing of debtor's case.

IT IS FURTHER ORDERED that Travelers has no lien rights in any accounts receivable generated post-petition.

## ORDER RE: DETERMINATION OF EXTENT OF TRAVELERS' INSURANCE COMPANY SECURED STATUS

This Court signed an order November 1, 1990, construing the secured status of Travelers Insurance Company as to various items of property which existed on the date of filing of debtor's case. The only issue which was left open for further resolution was the issue of whether Travelers Insurance Company could trace receipts from pre-petition accounts receivable, collected post-petition, pursuant to the tracing requirements of the California Commercial Code. The Court scheduled and conducted a telephonic hearing with the parties to determine how that issue may be resolved.

The parties stipulated at the telephonic hearing that the debtor's post-petition bank account never dipped below the amount of proceeds received from collection of pre-petition accounts receivable which were deposited into the debtor's bank account. Therefore, pursuant to the authorities and discussion set forth on pages 958 and 959

of the Court's decision signed November 1, 1990, Travelers has met its burden of tracing the pre-petition accounts receivable pursuant to the California Commercial Code.

## ORDER

IT IS THEREFORE ORDERED that the allowed secured claim of Travelers Insurance Company shall be increased by the sum of $409,368.16, which sum represents accounts receivable which existed on date of filing and which were collected post-petition.